******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEROME F. MOORE
(AC 39808)

DiPentima, C. J., and Bright and Bishop, Js.

*Syllabus*

The defendant, who had been sentenced to five years incarceration following his conviction of possession of narcotics, appealed to this court from the trial court's denial of his motion to correct an illegal sentence, in which he raised claims that his sentence exceeded the statutory maximum. On the date of the offense, possession of narcotics in violation of statute ([Rev. to 2013] § 21a-279) carried a sentence of imprisonment of up to seven years for a first offense. Prior to the defendant's conviction and sentencing, but subsequent to his arrest, the legislature amended § 21a-279 (a) in 2015 and reclassified a first offense of § 21a-279 (a) as a misdemeanor punishable by not more than one year of incarceration. On appeal, the defendant claimed that the trial court improperly determined that the 2015 amendment did not apply retroactively. He also claimed that his five year sentence constituted an excessive and disproportionate punishment in violation of the state and federal constitutions. *Held*:

1. The defendant could not prevail on his claim that his five year sentence exceeded the statutory maximum because the legislature expressed its intent that the 2015 amendment apply retroactively: the fact that the statute, as amended, contained no express statement that it applied retroactively did not render the statute ambiguous, as the absence of any language stating that the amendment applied retroactively indicated that the legislature intended for the amendment to apply prospectively only, which was consistent with precedent holding that the law in existence on the date of the offense governs and with the legislature's enactment of savings statutes demonstrating an intent that defendants be prosecuted and sentenced in accordance with the statutes in effect at the time of the crime, and because the statutory language was not susceptible to more than one plausible interpretation, there was no ambiguity requiring this court to look to the legislative history of the amendment to ascertain the legislature's intent, and, therefore, the trial court correctly determined that the 2015 amendment did not apply retroactively; moreover, the defendant's claim that this court should adopt the amelioration doctrine and apply it to his sentence was unavailing, as our Supreme Court previously has determined that that doctrine is in direct contravention of our savings statutes and has expressly declined to establish that ameliorative changes to criminal statutes apply retroactively, and this court was bound by that precedent.

2. The defendant's claim that his five year sentence constituted an excessive and disproportionate punishment in violation of the state and federal constitutions was unavailing; because the defendant failed to provide an independent analysis of his state constitutional claim pursuant to the factors set out in *State* v. *Geisler* (222 Conn. 672), which controlled the defendant's state constitutional claim, that claim was inadequately briefed and deemed abandoned, and with respect to his federal constitutional claim, the defendant failed to demonstrate that his five year sentence for a violation of § 21a-279 (a) was disproportionate and excessive in violation of the eighth amendment to the United States constitution, and, therefore, the trial court did not abuse its discretion in denying his motion to correct an illegal sentence.

Argued November 29, 2017—officially released March 6, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of possession of narcotics and possession of narcotics with intent to sell, brought to the Superior Court in the judicial district of Litchfield and tried to the jury before the court, *Shah, J.*; verdict and judgment

of guilty of possession of narcotics; thereafter, the trial court denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Emily H. Wagner*, assistant public defender, with whom was *Michael K. Courtney*, public defender, for the appellant (defendant).

*Jennifer F. Miller*, deputy assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Jerome F. Moore, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant claims that the court incorrectly concluded that (1) the 2015 amendment to General Statutes § 21a-279 (a), which the legislature passed during a special session in June, 2015; see Public Acts, Spec. Sess., June, 2015, No. 15-2, § 1; does not apply retroactively to his sentence,[1] and (2) his five year sentence does not violate the eighth amendment to the United States constitution or article first, §§ 8 and 9, of the Connecticut constitution. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On August 6, 2014, the defendant was arrested for possession of twenty-eight bags of heroin and charged with possession of narcotics in violation of § 21a-279 (a), and possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b). On the date of the offense, a violation of § 21a-279 (a) carried a sentence of imprisonment of up to seven years for a first offense.[2] See General Statutes (Rev. to 2013) § 21a-279 (a). Prior to the defendant's conviction and sentencing, but subsequent to his arrest, the legislature amended § 21a-279 (a), with an effective date of October 15, 2015, and reclassified a first offense of § 21a-279 (a) as a misdemeanor punishable by not more than one year of incarceration. See General Statutes (Supp. 2016) § 21a-279 (a).

Following a jury trial, on April 1, 2016, the defendant was found not guilty of possession of narcotics with intent to sell in violation of 21a-278 (b), but guilty of possession of narcotics in violation of § 21a-279 (a). On May 27, 2016, the court, *Shah, J.*, sentenced the defendant, pursuant to § 21a-279 (a), to a period of five years of incarceration.

On June 8, 2016, the defendant filed a motion to correct an illegal sentence. On August 23, 2016, defense counsel filed an amended motion to correct an illegal sentence and a supporting memorandum of law, claiming that the defendant's five year sentence exceeded the statutory maximum set forth in § 21a-279 (a), as amended by Spec. Sess. P.A. 15-2 (2015 amendment). On the same day, the court heard arguments on the amended motion.

On September 16, 2016, the court denied the defendant's motion to correct an illegal sentence, finding, inter alia, that (1) "there is no language in either the public act or its legislative history indicating a clear intent to apply the amendment retroactively" and (2) the sentence did not violate the defendant's right against excessive and disproportionate punishment under the federal and state constitutions. This appeal followed.

On appeal, the defendant claims that the court

improperly denied his motion to correct an illegal sentence because (1) the legislature expressed its intent that the 2015 amendment applies retroactively; and (2) following the amendment to § 21a-279 (a), his sentence now constitutes excessive and disproportionate punishment in violation of the state and federal constitutions. "We review claims that the court improperly denied the defendant's motion to correct an illegal sentence under an abuse of discretion standard." *State* v. *Pagan*, 75 Conn. App. 423, 429, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003). We address each claim in turn.

I

The defendant first claims that his five year sentence exceeds the statutory maximum set forth in § 21a-279 (a) because the legislature expressed its intent that the 2015 amendment applies retroactively. He claims, as well, that by reason of the rule of amelioration, the statute should be applied retroactively. We are not persuaded.[3]

Whether, as a matter of statutory interpretation, the 2015 amendment may be applied retroactively to crimes committed before its effective date of October 1, 2015, is a question of law over which our review is plenary. See *State* v. *Kalil*, 314 Conn. 529, 552, 107 A.3d 343 (2014); see also *State* v. *Jackson*, 153 Conn. App. 639, 643, 103 A.3d 166 (2014) ("Whether a statute is to be applied retroactively is a question of statutory construction. . . . Issues of statutory construction raise questions of law, over which we exercise plenary review." [Citation omitted; internal quotation marks omitted.]), cert. denied, 315 Conn. 912, 106 A.3d 305 (2015).

"In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 314 Conn. 552; accord *In re Daniel H.*, 237 Conn. 364, 377, 678 A.2d 462 (1996). "This principle is derived from the legislature's enactment of savings statutes such as General Statutes § 54-194, which provides that '[t]he repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect,' and General Statutes § 1-1 (t), which provides that '[t]he repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed.' " *State* v. *Kalil*, supra, 552. "It is obvious from the clear, unambiguous, plain language of the savings statutes that the legislature intended that [defen-

dants] be prosecuted and sentenced in accordance with and pursuant to the statutes in effect at the time of the commission of the crime. Our courts have repeatedly held that these savings statutes preserve all prior offenses and liability therefor so that when a crime is committed and the statute violated is later amended or repealed, defendants remain liable under the revision of the statute existing at the time of the commission of the crime." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 153 Conn. App. 644–45.

"We will not give retrospective effect to a criminal statute absent a clear legislative expression of such intent. . . . When the meaning of a statute initially may be determined from the text of the statute and its relationship to other statutes . . . extratextual evidence of the meaning of the statute shall not be considered. . . . When the meaning of a provision cannot be gleaned from examining the text of the statute and other related statutes without yielding an absurd or unworkable result, extratextual evidence may be consulted. . . . Thus . . . every case of statutory interpretation . . . requires a threshold determination as to whether the provision under consideration is plain and unambiguous. This threshold determination then governs whether extratextual sources can be used as an interpretive tool. . . . [T]he fact that . . . relevant statutory provisions are silent . . . does not mean that they are ambiguous. . . . [O]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation." (Citations omitted; internal quotation marks omitted.) Id., 643–44.

The defendant argues that extratextual evidence should be considered in the present case because a "plain language reading of [the statute] results in an absurd and unworkable result." Specifically, the defendant asserts that Spec. Sess. "P.A. 15-2, § 1, was a budget implementing bill and the legislature has a constitutional duty to pass a balanced budget." He further contends that "[i]t would be absurd to conclude that the legislature would vote to approve this budget implementing bill knowing that the projected fiscal savings in the bill would not be realized . . . ." We disagree.

We begin with the "threshold determination as to whether the provision under consideration is plain and unambiguous." *State* v. *Jackson*, supra, 153 Conn. App. 643. The effective date of the 2015 amendment is October 1, 2015. See Public Acts, Spec. Sess., June, 2015, No. 15-2, § 1 (section "21a-279 of the general statutes is repealed and the following is substituted in lieu thereof [Effective October 1, 2015] . . . ."). The amendment contains no express statement that it applies retroactively. Its silence in this regard, however, does not render it ambiguous. Rather, the absence of any language stating that the amendment applies retroactively indi-

cates that the legislature intended the amendment to apply prospectively only. See *State* v. *Kalil*, supra, 314 Conn. 558; General Statutes §§ 54-194 and 1-1 (t).

Additionally, the legislature knows how to make a statute apply retroactively when it intends to do so. See *State* v. *Kevalis*, 313 Conn. 590, 604, 99 A.3d 196 (2014) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly" [internal quotation marks omitted]). Thus, if the legislature had intended the 2015 amendment to apply retroactively, it could have used clear and unequivocal language indicating such an intent. It did not do so. A prospective only application of the statute is consistent with our precedent and the legislature's enactment of the savings statutes; see *State* v. *Kalil*, supra, 314 Conn. 552; and, therefore, the statutory language is not susceptible to more than one plausible interpretation. See *State* v. *Jackson*, supra, 153 Conn. App. 644. Because there is no ambiguity in the 2015 amendment, we need not look to its legislative history to ascertain the legislature's intent.[4] We conclude that the court correctly determined that the 2015 amendment does not apply retroactively to the defendant's sentence.

We also reject the defendant's argument that we should adopt the amelioration doctrine and apply it to his sentence. "The amelioration doctrine provides that amendments to statutes that lessen their penalties are applied retroactively." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 314 Conn. 552. Our Supreme Court expressly has declined to establish that ameliorative changes to criminal statutes apply retroactively, finding that "the doctrine is in direct contravention of Connecticut's savings statutes." (Footnote omitted.) Id., 553. We are bound by this precedent.

On the basis of the foregoing, we conclude that, in the absence of legislative intent that the 2015 amendment applies retroactively, the defendant properly was sentenced pursuant to the statute in effect on the date of the offense for which he was convicted.

II

The defendant next claims that his five year sentence constitutes an excessive and disproportionate punishment in violation of the eighth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. Specifically, the defendant asserts that his "sentence is no longer graduated to the offense" because Spec. Sess. "P.A. 15-2, § 1, and its surrounding legislative history express a change in criminal justice policy in this state, namely, that incarcerating rather than treating drug-dependent individuals no longer comports with our evolving standards of decency." In response, the state claims that the court properly denied the defendant's motion to correct

because he failed to establish that his punishment was unconstitutional. The state further argues that this court should not review the defendant's state constitutional claim because he failed to adequately brief the claim under the well established *Geisler*[5] analysis. We agree with the state.

"Our review of the defendant's constitutional claims is plenary." (Internal quotation marks omitted.) *State* v. *Rivera*, 177 Conn. App. 242, 252, 172 A.3d 260 (2017); see also *State* v. *Taylor G.*, 315 Conn. 734, 741, 110 A.3d 338 (2015) ("[a] challenge to [t]he constitutionality of a statute presents a question of law over which our review is plenary" [internal quotation marks omitted]).

A

We first address the state's argument that the defendant's constitutional claim under article first, §§ 8 and 9, of the Connecticut constitution is inadequately briefed. Specifically, the state argues that the defendant failed to analyze his claim pursuant to the *Geisler* factors, and instead analyzed his claim under a two factor analysis set forth in *State* v. *Santiago*, 318 Conn. 1, 122 A.3d 1 (2015). The defendant maintains that, following S*antiago*, "[a] reviewing court engages in a two stage analysis in determining whether a challenged punishment is unconstitutionally excessive and disproportionate. . . . First, the court looks to 'objective factors' to determine whether the punishment at issue comports with contemporary standards of decency. . . . [Second, the] court must [then] decide whether the constitution permits imposition of the defendant's . . . sentence." We agree with the state that *Geisler* controls, and accordingly, we conclude that the defendant's state constitutional claim is inadequately briefed.

"It is well established that federal constitutional law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights. . . . In several cases, our Supreme Court has concluded that the state constitution provides broader protection of individual rights than does the federal constitution. . . . It is by now well established that the constitution of Connecticut prohibits cruel and unusual punishments under the auspices of the dual due process provisions contained in article first, §§ 8 and 9. Those due process protections take as their hallmark principles of fundamental fairness rooted in our state's unique common law, statutory, and constitutional traditions. . . . Although neither provision of the state constitution expressly references cruel or unusual punishments, it is settled constitutional doctrine that both of our due process clauses prohibit governmental infliction of cruel and unusual punishments." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, supra, 177 Conn. App. 252–53. "In ascertaining the contours of the protections afforded under

our state constitution, we utilize a multifactor approach that we first adopted in [*Geisler*]." *State* v. *Santiago*, 319 Conn. 935, 937 n.3, 125 A.3d 520 (2015). See footnote 5 of this opinion.

We reject the defendant's argument that our Supreme Court, in *State* v. *Santiago*, supra, 318 Conn. 1, abandoned the *Geisler* analysis for claims of cruel and unusual punishment and instead broadly adopted a two part test. Our review of *Santiago* does not support the defendant's interpretation. Contrary to the defendant's assertions, in *Santiago*, the Supreme Court did analyze the defendant's state constitutional claim pursuant to the *Geisler* factors.[6] See *State* v. *Santiago*, supra, 17–46. We therefore conclude that *Geisler* still controls. We note, as well, that this court recently has applied the *Geisler* factors to a claim of cruel and unusual punishment, and we are bound by this court's precedent. See *State* v. *Rivera*, supra, 177 Conn. App. 251–75 (analyzing, pursuant to *Geisler* factors, defendant's claim that "mandatory minimum sentence of twenty-five years of incarceration without the possibility of parole imposed on a juvenile homicide offender" constitutes cruel and unusual punishment).

Absent from the defendant's discussion of his state constitutional claim is an independent analysis of the *Geisler* factors. Accordingly, we deem abandoned his claim under the state constitution, and we decline to review it. See *State* v. *Bennett*, 324 Conn. 744, 748 n.1, 155 A.3d 188 (2017) ("The defendant has asserted various claims under both the state and federal constitutions, but he has not provided an independent analysis of the former in accordance with . . . *Geisler* . . . . Therefore, we deem abandoned any state constitutional claims." [Citation omitted.]); see also *Morrissey-Manter* v. *Saint Francis Hospital & Medical Center*, 166 Conn. App. 510, 526–27, 142 A.3d 363 (claim inadequately briefed on appeal deemed abandoned and court declined to review it), cert. denied, 323 Conn. 924, 149 A.3d 982 (2016).

### B

We next address the defendant's argument that his sentence is excessive and disproportionate in violation of the eighth amendment to the United States constitution. The defendant argues that his sentence violates the eighth amendment because it "is out of step with our contemporary standards of decency and serves no penological purpose," given the change in criminal justice policy following the enactment of the 2015 amendment. We are unpersuaded.[7]

"[T]he eighth amendment [to the United States constitution] mandates that punishment be proportioned and graduated to the offense of conviction." *State* v. *Santiago*, supra, 318 Conn. 20. "The eighth amendment's prohibition against cruel and unusual punishment is

made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. . . . [T]he United States Supreme Court has indicated that at least three types of punishment may be deemed unconstitutionally cruel . . . [including] excessive and disproportionate punishments." (Citation omitted; internal quotation marks omitted.) *Dumas* v. *Commissioner of Correction*, 168 Conn. App. 130, 135–36, 145 A.3d 355, cert. denied, 324 Conn. 901, 151 A.3d 1288 (2016).

In addressing an eighth amendment claim, "[a] reviewing court engages in a two stage analysis [to determine] whether a challenged punishment is unconstitutionally excessive and disproportionate. . . . First, the court looks to objective factors to determine whether the punishment at issue comports with contemporary standards of decency. . . . [This includes] the historical development of the punishment at issue, legislative enactments, and the decisions of prosecutors and sentencing juries." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, supra, 318 Conn. 21. Second, "courts must . . . bring their own independent judgments to bear, giving careful consideration to the reasons why a civilized society may accept or reject a given penalty. . . . Although the judgments of legislatures, juries, and prosecutors weigh heavily in the balance, it is for [the court] ultimately to judge whether the [constitution] permits imposition of the . . . penalty . . . . This analysis necessarily encompasses the question of whether the penalty at issue promotes any of the penal goals that courts and commentators have recognized as legitimate: deterrence, retribution, incapacitation, and rehabilitation. . . . A sentence materially lacking any legitimate penological justification would be nothing more than the gratuitous infliction of suffering and, by its very nature, disproportionate." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 22–23.

The defendant first asserts that his five year sentence no longer comports to contemporary standards of decency. See id., 21. In support of this claim, the defendant relies primarily on the legislative history surrounding the 2015 amendment and remarks made by the governor about how the 2015 amendment indicates a "systematic change" in the treatment of those convicted of minor possession offenses.

The defendant's focus on the remarks of our legislators does little to support his claim. It bears repeating that the legislature knows how to make the application of a statute retroactive when it wants to do so. See *State* v. *Kevalis*, supra, 313 Conn. 604. It necessarily follows that if the legislature had felt that "extended periods of incarceration are no longer necessary or appropriate forms of punishment for nonviolent drugs offenders," or that a sentence of greater than one year

for a first violation of § 21a-279 (a) constituted "cruel and unusual punishment," as the defendant argues, the legislature would have so indicated by making the statute apply retroactively. It did not do so. See part I of this opinion. Further undercutting the defendant's reliance on our legislators' comments is the fact that our legislature enacted the savings statutes, §§ 54-194 and 1-1 (t), to ensure "that [defendants] be prosecuted and sentenced in accordance with and pursuant to the statutes in effect at the time of the commission of the crime. . . . [T]hese savings statutes preserve all prior offenses and liability therefor so that when a crime is committed and the statute violated is later amended or repealed, defendants remain liable under the revision of the statute existing at the time of the commission of the crime." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 153 Conn. App. 644–45.

Furthermore, as the court noted in its memorandum of decision, "contrary to the defendant's assertions, neither [Spec. Sess.] P.A. 15-2 nor its legislative history indicate that a five year prison sentence for possession of narcotics imposed based on a persistent history of drug offenses and a failure to complete probation is 'disproportionate and excessive . . . [as] judged by the contemporary, evolving standards of decency that mark the progress of a maturing society.' " We agree. As the defendant concedes, many jurisdictions still treat simple possession as a felony. Further, the 2015 revision to § 21a-279 (a) still permits a defendant to be charged with a felony in certain circumstances. See General Statutes (Supp. 2016) § 21a-279 (a) (3). Thus, the defendant has failed to demonstrate that his sentence no longer comports to contemporary standards of decency using objective indicia such as "the historical development of the punishment at issue, legislative enactments, and the decisions of prosecutors and sentencing juries." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 318 Conn. 21.

The defendant also has failed to demonstrate that his five year sentence serves no legitimate penological justification. Although the defendant argues that his sentence offers no deterrent value to others who will now receive a maximum sentence of up to one year incarceration for the same offense, he fails to adequately rebut other recognized penological purposes— retribution, incapacitation, and rehabilitation.[8] See *State* v. *Santiago*, supra, 318 Conn. 22.

On the basis of the foregoing, we conclude that the court properly found that the defendant failed to demonstrate that his five year sentence for a violation of § 21a-279 (a) is disproportionate and excessive in violation of the eighth amendment to the United States constitution. Accordingly, the court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On August 6, 2014, the date the defendant committed the offense for which he was convicted, General Statutes (Rev. to 2013) § 21a-279 (a) provided: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

At the time of the defendant's conviction and sentencing, General Statutes (Supp. 2016) § 21a-279 (a) provided: "(1) Any person who possesses or has under such person's control any quantity of any controlled substance, except less than one-half ounce of a cannabis-type substance and except as authorized in this chapter, shall be guilty of a class A misdemeanor.

"(2) For a second offense of subdivision (1) of this subsection, the court shall evaluate such person and, if the court determines such person is a drug-dependent person, the court may suspend prosecution of such person and order such person to undergo a substance abuse treatment program.

"(3) For any subsequent offense of subdivision (1) of this subsection, the court may find such person to be a persistent offender for possession of a controlled substance in accordance with [General Statutes §] 53a-40."

Hereinafter, unless otherwise indicated, all references to § 21a-279 (a) in this opinion are to the 2013 revision of the statute.

[2] The defendant has prior drug convictions, and thus, the state initially charged the defendant as a persistent felony offender in a part B information. Prior to sentencing, however, the state's attorney withdrew that part B information. Therefore, the defendant was sentenced as a first offender pursuant to § 21a-279 (a).

[3] We also disagree with the defendant's contention that the principles set forth in *State* v. *Kalil*, 314 Conn. 529, 107 A.3d 343 (2014), are inapplicable to the present case. In *Kalil*, our Supreme Court addressed a situation analogous to that of the present case. See id., 550–59 (concluding that amendment to larceny statute did not apply retroactively, where defendant committed crime prior to amendment but was convicted and sentenced thereafter).

[4] Even if we were to determine that the statute is ambiguous, so as to implicate a review of its legislative history, we are not persuaded that comments from legislators and the fiscal impact statement support the defendant's claim that a plain language reading of the statute leads to "absurd and unworkable results."

As the court aptly noted in its memorandum of decision, "the legislature was clearly aware of the many defendants waiting to be tried and sentenced under the then-existing version of § 21a-279 (a) when they discussed and passed [Spec. Sess.] P.A. 15-2. . . . [I]f the legislature had intended [Spec. Sess.] P.A. 15-2 to apply retroactively, it would have used language clearly indicating the act's retroactive effect, which it did not, either in the public act itself or the act's legislative history."

Additionally, our Supreme Court has recognized that fiscal impact statements are not evidence of legislative intent. See *Butts* v. *Bysiewicz*, 298 Conn. 665, 688 n.22, 5 A.3d 932 (2010). The fiscal impact statement for the 2015 amendment itself even contains a disclaimer, which provides, in relevant part: "The preceding Fiscal Impact statement is prepared for the benefit of the members of the General Assembly, solely for the purposes of information, summarization and explanation and *does not represent the intent of the General Assembly or either chamber thereof for any purpose*." (Emphasis added.) Thus, the fiscal impact statement cannot be utilized as a fulcrum to lever the statute's plain meaning into ambiguity.

[5] "In order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach . . . (2) holdings and dicta of [the Supreme Court], and the Appellate Court . . . (3) federal precedent . . . (4) sister state decisions or sibling approach . . . (5) the historical approach . . . and (6) economic/sociological considerations." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992); see also

*State* v. *Saturno*, 322 Conn. 80, 102, 139 A.3d 629 (2016).

[6] As further support for our conclusion, subsequent to the release of the decision in *State* v. *Santiago*, supra, 318 Conn. 1, the state filed a motion to stay execution of the judgment in that case, arguing, inter alia, that it "lacked notice that [the Supreme Court] would consider [the various *Geisler*] factors *in evaluating the defendant's claim*." (Emphasis added.) *State* v. *Santiago*, supra, 319 Conn. 939. In denying the state's motion, the court noted that "the state's analysis of the various *Geisler* factors [in its supplemental brief] refutes its contention that it lacked notice." Id. The court further noted that "as long as the state constitutional claim is adequately briefed in accordance with *Geisler*, as it unarguably was in this case, it is this court's responsibility to identify and evaluate all of the relevant factors and considerations so that we may reach the correct constitutional result." (Emphasis omitted.) Id., 940.

[7] We also reject the defendant's argument that his five year sentence is unconstitutional because it was not authorized by law. As we conclude in part I of this opinion, the court correctly sentenced the defendant pursuant to the statute that was in effect on the date he committed the crime, which permitted a sentence of up to seven years of incarceration for a first offense. See General Statutes (Rev. to 2013) § 21a-279 (a). Accordingly, the defendant's five year sentence was authorized by law. See *State* v. *Kalil*, supra, 314 Conn. 552.

[8] In its memorandum of decision, the court noted that its decision to impose a five year sentence included, in relevant part, "the need to achieve a specific [and] general deterrent effect, the need for incapacitation, the need to effect rehabilitation, and the need to achieve justice."

—————————————————