******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DEJON A. SMITH
## (AC 44156)

Prescott, Moll and Flynn, Js.

*Syllabus*

The defendant, who previously had been convicted on a plea of guilty of the crime of possession of narcotics with intent to sell, appealed to this court following the trial court's denial of his motion to correct an illegal sentence. In 2013, as part of his plea agreement, the defendant was sentenced to five years of incarceration, followed by five years of special parole. In 2018, our legislature enacted a public act (P.A. 18-63), which amended certain statutes (§§ 53a-28 (b) and 54-125e (b)) to eliminate special parole as a punishment for certain drug related offenses, including that for which the defendant had been convicted and sentenced, and to require the trial court to make certain determinations prior to the imposition of a period of special parole. Thereafter, the defendant filed a motion to correct an illegal sentence. The defendant argued that he should be resentenced because P.A. 18-63 eliminated special parole as a possible punishment for the offense for which he had been sentenced. The state filed an objection to the motion. The trial court denied the motion, stating that §§ 53a-28 (b) and 54-125e (b) were substantive, rather than procedural, in nature and, as such, the amendments required by P.A. 18-63 did not apply retroactively. *Held* that the trial court properly denied the defendant's motion to correct an illegal sentence: contrary to the defendant's claim, this court's retroactivity analysis was not controlled by the doctrine of clarifications because P.A. 18-63 was a change in the law, rather than clarifying legislation, as the legislature did not incorporate into the act an explicit statement of its intent to clarify §§ 53a-28 (b) and 54-125e (b), the prior language of those statutes was already clear, and, through the enactment of P.A. 18-63, the legislature added language to change such statutes by narrowing their application, and, accordingly, this court was not required to consider the legislative history of the act in determining the legislature's intent with regard to retroactivity; moreover, pursuant to *State* v. *Omar* (209 Conn. App. 283), because P.A. 18-63 repealed and replaced the imposition of a form of punishment for a criminal conviction, this court's retroactivity analysis was instead controlled by *State* v. *Bischoff* (337 Conn. 739), *State* v. *Kalil* (314 Conn. 529), and the savings statutes (§§ 54-194 and 1-1 (t)), and, interpreted in accordance therewith, P.A. 18-63 clearly and unambiguously prohibited retroactive application of the amendments to §§ 53a-28 (b) and 54-125e (b), and such an interpretation did not lead to an absurd or unworkable result.

Argued October 4—officially released December 14, 2021

*Procedural History*

Information charging the defendant with the crimes of possession of narcotics with intent to sell, possession of drug paraphernalia, and illegal operation of a motor vehicle while under suspension, brought to the Superior Court in the judicial district of Litchfield, geographical area number eighteen, where the defendant was presented to the court, *Ginocchio, J.*, on a plea of guilty to possession of narcotics with intent to sell; thereafter, the state entered a nolle prosequi as to each of the remaining charges; judgment of guilty; subsequently, the court, *Danaher, J.*, denied the defendant's amended motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Emily H. Wagner*, assistant public defender, for the

appellant (defendant).

*Thadius L. Bochain*, deputy assistant state's attorney, with whom, on the brief, was *Dawn Gallo*, state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. This is an appeal from the judgment of the trial court denying the amended motion to correct an illegal sentence filed by the defendant, Dejon A. Smith, pursuant to Practice Book § 43-22. On appeal, the defendant claims that the court erred in concluding that certain amendments to Connecticut's special parole statute, embodied in No. 18-63, §§ 1 and 2, of the 2018 Public Acts (P.A. 18-63), which became effective on October 1, 2018, did not apply retroactively to render his 2013 sentence imposing special parole void.[1] We disagree and, accordingly, affirm the judgment of the trial court.

We conclude that, when the legislature enacted P.A. 18-63, which changed the law by prohibiting special parole as a sentence for certain narcotics offenses, it did so prospectively, not retroactively. We also conclude that the silence in P.A. 18-63 regarding retroactivity is evidence of intent for prospective application only; see *State* v. *Bischoff*, 337 Conn. 739, 756, 258 A.3d 14 (2021); that prospective application creates neither an absurd nor an unworkable result; and that General Statutes §§ 54-194 and 1-1 (t) apply and, when read together, provide that the repeal of a statute prescribing the punishment for a crime shall not affect any liability for punishment incurred before the repeal is effective, unless a contrary legislative intent is expressed within an amendatory statute.

The following facts are pertinent to our resolution of this appeal. On May 14, 2013, the defendant was arrested in Torrington. The state charged him with, among other crimes, possession of narcotics with intent to sell in violation of General Statutes (Rev. to 2013) § 21a-277 (a). On October 8, 2013, the defendant pleaded guilty to that charge. On December 19, 2013, as part of a plea agreement, he was sentenced to an agreed upon sentence of five years to serve, followed by five years of special parole.

After the defendant was sentenced, our legislature enacted P.A. 18-63, which eliminated special parole as a punishment for certain drug offenses. Public Act 18-63 is titled "An Act Concerning Special Parole for High-Risk, Violent and Sexual Offenders" and contains three sections. Relevant to the present appeal are §§ 1 and 2 of P.A. 18-63,[2] which amended General Statutes (Rev. to 2013) §§ 53a-28 (b) and 54-125e (b),[3] respectively. Prior to the enactment of P.A. 18-63 and at the time the defendant committed the crimes for which he was convicted, § 53a-28 (b) (9) authorized a court to impose as a punishment "a term of imprisonment and a period of special parole as provided in section 54-125e." Section 1 of P.A. 18-63 amended that portion of § 53a-28 (b) (9) by adding in relevant part that "the court may not impose a period of special parole for convictions

of offenses under chapter 420b." Section 21a-277 (a), the statute under which the defendant was convicted, is included in chapter 420b of the General Statutes. Section 2 of P.A. 18-63 amended § 54-125e (b) by adding in relevant part that "the court may not impose a period of special parole unless the court determines, based on the nature and circumstances of the offense, the defendant's prior criminal record and the defendant's history of performance on probation or parole, that a period of special parole is necessary to ensure public safety." Public Act 18-63 lists an effective date of October 1, 2018.

On June 20, 2019, the defendant, in a self-represented capacity, filed a motion to correct an illegal sentence. On August 13, 2019, the court appointed a public defender to conduct a "sound basis" determination under *State* v. *Casiano*, 282 Conn. 614, 627, 922 A.2d 1065 (2007), regarding the defendant's motion. The public defender determined that there was a sound basis as to one of the issues raised in the defendant's motion and, on November 27, 2019, filed an amended motion to correct an illegal sentence on the defendant's behalf. In that motion, the defendant argued that he should be resentenced because P.A. 18-63 had eliminated special parole as a possible sentence for the drug offense for which he had been convicted and sentenced. On December 27, 2019, the state filed an objection to the amended motion to correct. On January 3, 2020, the parties appeared before the court, *Danaher, J.*, and agreed to have the matter considered on the papers.

On February 4, 2020, the court, *Danaher, J.*, denied the defendant's amended motion to correct an illegal sentence and issued a memorandum of decision. The court, relying in part on *State* v. *Nathaniel S.*, 323 Conn. 290, 146 A.3d 988 (2016), concluded that the statutes amended by P.A. 18-63, §§ 1 and 2, are substantive, rather than procedural, in nature and, thus, cannot be applied retroactively. The court also stated that "there [was] no need to attempt to resolve the retroactivity issue by analyzing the legislative history regarding P.A. 18-63."

We now turn to the principal issue to be decided in this appeal, namely, whether P.A. 18-63, §§ 1 and 2, should be applied retroactively to the defendant's agreed upon December 19, 2013 sentence. We agree with the trial court that P.A. 18-63 does not apply retroactively, but we reach our conclusion by applying the retroactivity analysis that our Supreme Court has applied in cases such as *State* v. *Kalil*, 314 Conn. 529, 107 A.3d 343 (2014), and *State* v. *Bischoff*, supra, 337 Conn. 739.

We begin by setting forth the standard of review applicable to this claim. Ordinarily, claims that the trial court improperly denied a defendant's motion to correct an illegal sentence are reviewed pursuant to an abuse

of discretion standard. *State* v. *Fairchild*, 155 Conn. App. 196, 210, 108 A.3d 1162, cert. denied, 316 Conn. 902, 111 A.3d 470 (2015). Nonetheless, a trial court's determination of whether a new statute is to be applied retroactively or only prospectively presents a question of law over which this court exercises plenary review. See *State* v. *Bischoff*, supra, 337 Conn. 745, citing *Walsh* v. *Jodoin*, 283 Conn. 187, 195, 925 A.2d 1086 (2007).

The defendant advances two distinct arguments as to why the legislature intended P.A. 18-63 to apply retroactively. He first argues that P.A. 18-63 is clarifying legislation and that the legislature "rewrote [§ 53a-28 (b)] to comport with its original intent." Relying on the legislative history of P.A. 18-63, he contends that "the legislature took direct, corrective action to resolve the misuse or overuse of special parole as a sentencing tool by the judiciary . . . ." Thus, he contends, "[b]ecause the law was never intended to authorize special parole for nonviolent drug offenders, the defendant's sentence of special parole is not authorized by statute and is illegal." In other words, the defendant argues that courts were never permitted to impose sentences of special parole on nonviolent drug offenders and that "the law was being misapplied on a consistent basis by the judiciary . . . ." Alternatively, the defendant argues that if this court interprets P.A. 18-63 as a change in the law, as opposed to clarifying legislation, it is clear that the legislature intended that special parole not be imposed on any nonviolent drug offender. As part of this argument, he requests that, to the extent that *State* v. *Kalil*, supra, 314 Conn. 529, requires this court to apply a different interpretation, *Kalil* should be overruled.[4] Because *Kalil* is binding on this court, we will not address this part of the defendant's argument.

The state argues that P.A. 18-63 is a change in the law, rather than clarifying legislation, and that § 53a-28 (b) (9) prescribes or defines a punishment. Thus, it argues that the savings clauses codified in §§ 54-194[5] and 1-1 (t),[6] which prohibit retroactivity in the absence of an express statement by the legislature, apply to the amended version of § 53a-28 (b) (9). The state further argues that this court need not analyze the legislative history of P.A. 18-63 to determine whether it is clarifying legislation. In his reply brief, the defendant counters that the doctrine of clarifications requires this court to first determine whether the legislation clarified an existing law or changed it. He contends that, "in making this initial determination, our courts look to the amendatory language as well as the legislative history and circumstances surrounding the amendment's enactment." He argues that "the reviewing court only conducts its retroactivity analysis as articulated in *Kalil* and *Bischoff* if it first determines that the amendment is a change in the law rather than a clarification." We agree with each of the state's arguments.

We first address the defendant's argument that P.A. 18-63 is clarifying legislation. Although a criminal statute is at issue in the present case, the defendant relies heavily on *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 927 A.2d 793 (2007), which is a civil case. He does so despite the existence of criminal case law and criminal savings statutes that specifically control how we must interpret amendatory legislation relating to the punishment for crimes. The defendant does not cite any criminal case in which this court or our Supreme Court has looked at the legislative history and circumstances surrounding the enactment of an amendment affecting the punishment for a crime before applying these savings statutes. "The savings statutes that govern amendments to criminal laws contemplate only prospective application. . . . Our courts have repeatedly held that these savings statutes preserve all prior offenses and liability therefor so that when a crime is committed and the statute violated is later amended or repealed, defendants remain liable under the revision of the statute existing at the time of the commission of the crime." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Jackson*, 153 Conn. App. 639, 644–45, 103 A.3d 166 (2014), cert. denied, 315 Conn. 912, 106 A.3d 305 (2015). The defendant requests that we look beyond the plain language of P.A. 18-63 to ascertain the intent of the legislature regarding retroactivity, which is precisely what our criminal savings statutes and General Statutes § 1-2z[7] prohibit.

The defendant argues that the "original intent" of special parole "was to provide close monitoring for postrelease inmates and quick reincarceration for dangerous and violent offenders who posed an especially high risk to public safety." He contends that, over time, courts increasingly imposed special parole on nonviolent offenders beyond what the legislature intended. He argues that, "once the inappropriate use of special parole was brought to light, the legislature reacted by passing P.A. 18-63, which was designed, principally, to realign authorized sentences under § 53a-28 with the original intent of § 54-125e . . . . Nonviolent drug crimes were *never* intended to fall within its ambit." (Emphasis added.) In support of this argument, he cites the legislative history of both P.A. 18-63 and No. 98-234 of the 1998 Public Acts, which is the act that created special parole as a form of punishment.

We disagree with the defendant that we should consult the legislative history of P.A. 18-63 to determine the legislature's intent regarding retroactivity.[8] Our principles of statutory interpretation are well established. "We will not give retrospective effect to a criminal statute absent a clear legislative expression of such intent." (Internal quotation marks omitted.) *State* v. *Moore*, 180 Conn. App. 116, 122, 182 A.3d 696, cert. denied, 329

Conn. 905, 185 A.3d 595 (2018). "[P]ursuant to § 1-2z, [the court is] to go through the following initial steps: first, consider the language of the statute at issue, including its relationship to other statutes, as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there; but third, if after the completion of step one, [the court] conclude[s] that, as applied to the facts of the case, there is more than one likely or plausible meaning of the statute, [the court] may consult other sources, beyond the statutory language, to ascertain the meaning of the statute." (Internal quotation marks omitted.) *State* v. *Prazeres*, 97 Conn. App. 591, 594–95, 905 A.2d 719 (2006).

"[T]he legislature knows how to make a statute apply retroactively when it intends to do so." *State* v. *Moore*, supra, 180 Conn. App. 123. "Courts cannot, by construction, read into legislation provisions not clearly stated." *Thornton Real Estate, Inc.* v. *Lobdell*, 184 Conn. 228, 230, 439 A.2d 946 (1981). Furthermore, criminal statutes are to be strictly construed; *State* v. *Smith*, 194 Conn. 213, 221–22 n.7, 479 A.2d 814 (1984); and "[w]e must look at the law as drafted, not at its purported aim. [I]n the interpretation of statutes, the intent of the legislature is to be found not in what it meant to say, but in what it did say. . . . A legislative intention not expressed in some appropriate manner has no legal existence." (Citations omitted; internal quotation marks omitted.) Id., 222.

In the present case, the legislature did not incorporate into the title or text of P.A. 18-63 an explicit statement of its intent to clarify §§ 53a-28 (b) and 54-125e (b). See *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 519, 829 A.2d 810 (2003). The defendant does not point to any ambiguities in the amendatory language of P.A. 18-63 that lead us to question the legislature's intent regarding clarification. Public Act 18-63 did not, for example, change the definition of a word or phrase that was subject to multiple interpretations. Rather, in enacting P.A. 18-63, the legislature eliminated a punishment that the plain language of §§ 53a-28 (b) and 54-125e explicitly allowed courts to impose on nonviolent drug offenders prior to its enactment.

Although some members of the legislature in 1998 might have intended that special parole be imposed only on violent offenders who posed a threat to public safety, the legislature included no language of that intent in the statutes governing special parole. The legislature in 2018 recognized that those statutes permitted courts to impose periods of special parole on nonviolent drug offenders and chose to amend the statutes. The 2018 amendments *changed* the statutory scheme by (1) adding a clause to § 53a-28 (b) (9), which established that any person convicted of a crime under chapter

420b could no longer be exposed to a punishment that previously was permissible, and (2) adding new language to § 54-125e (b) that requires courts, when sentencing a person, to make a determination that imposing a period of special parole is necessary to ensure public safety. Put differently, the language in the prior versions of these statutes was already clear prior to the amendments, and the legislature added language to change them by narrowing their application. For the foregoing reasons, we conclude that the doctrine of clarifications does not guide our retroactivity analysis in the present case.

We addressed the retroactivity of P.A. 18-63 in *State* v. *Omar*, 209 Conn. App. 283,      A.3d      (2021), also released today. In *Omar*, the defendant was convicted of nonviolent drug offenses included in chapter 420b of our General Statutes. Id., 288. In 2016, his sentence was modified to include a period of special parole. Id., 287. In 2019, he filed a motion to correct an illegal sentence in which he argued that P.A. 18-63 should be applied retroactively and requested that the court eliminate the term of special parole that it had imposed three years earlier. Id., 288–89.

In *Omar*, the state advanced a similar argument as it does in the present case, namely, "that, because P.A. 18-63, §§ 1 and 2, repealed and replaced the imposition of a form of punishment for a criminal conviction, this court's retroactivity analysis is controlled by *State* v. *Kalil*, [supra, 314 Conn. 529], and *State* v. *Bischoff*, supra, 337 Conn. 739, along with our savings statutes, §§ 54-194 and 1-1 (t)." *State* v. *Omar*, supra, 209 Conn. App. 290. After applying the applicable principles of statutory interpretation, we held that "the plain language of P.A. 18-63, §§ 1 and 2, clearly and unambiguously prohibits retroactive application and that this interpretation does not lead to an absurd or unworkable result, especially when viewed in context of the related savings statutes, §§ 54-194 and 1-1 (t)." Id., 296. We see no reason to repeat the analysis set forth in *State* v. *Omar*, supra, 283.[9] For the reasons set forth therein, we conclude that the trial court properly denied the defendant's amended motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In *State* v. *Omar*, 209 Conn. App. 283,      A.3d      (2021), which was released on the same date as this opinion, the defendant makes the same claim.

[2] Public Act 18-63 provides in relevant part: "Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. Subsection (b) of section 53a-28 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2018*):

"(b) Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences . . . (9) a term of imprisonment and a period of special parole as provided in section 54-125e, *as amended by this act, except that the court may not*

*impose a period of special parole for convictions of offenses under chapter 420b.*

"Sec. 2. Subsection (b) of section 54-125e of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2018*): (b) *(1)* When sentencing a person, *the court may not impose a period of special parole unless the court determines, based on the nature and circumstances of the offense, the defendant's prior criminal record and the defendant's history of performance on probation or parole, that a period of special parole is necessary to ensure public safety.* . . ." (Emphasis in original.)

[3] Unless we state otherwise, our references in this opinion to §§ 53a-28 (b) and 54-125e are to the 2013 revisions of those statutes.

[4] In his brief to this court, the defendant acknowledges that *Kalil* is binding on this court. He claims that this section of his brief "is written with the [Connecticut] Supreme Court as its intended audience and is included in order to preserve the issue for future review by the Supreme Court."

[5] General Statutes § 54-194 provides: "The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect."

[6] General Statutes § 1-1 (t) provides: "The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed."

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[8] At oral argument before this court, the defendant reiterated his argument that we must look beyond the plain language of P.A. 18-63 to ascertain the legislature's intent when it created special parole in 1998. His appellate counsel stated: "[T]he original legislation was intended to exclude offenses like drug offenses that are not considered high risk violent sexual offenses, but that . . . wasn't clear in its original state." His counsel later stated: "I do not see an ambiguity in the original legislation . . . I see silence and the Supreme Court has said numerous times that if the amendatory language is silent as to whether or not it clarifies, the court looks beyond that language to the legislative history."

By acknowledging that the original legislation was unambiguous, defense counsel contradicted the argument that P.A. 18-63 clarified the special parole statutes. In other words, if the original legislation was subject only to one interpretation, then there existed no language in the original statutes for the amendments to clarify. Thus, any amendments to those statutes would *change* their meaning.

[9] In *Omar*, the defendant, relying on *State* v. *Nathaniel S.*, supra, 323 Conn. 295, argued that the statutes amended by P.A. 18-63 are procedural in nature and, thus, that the amendments are intended to apply retroactively in the absence of a clear expression of legislative intent to the contrary. *State* v. *Omar*, supra, 209 Conn. App. 290. In the present case, the defendant argues that P.A. 18-63 should be applied retroactively because it is clarifying legislation. These arguments rely on two separate retroactivity analyses. Thus, it was necessary for us to analyze the defendant's clarification argument in its entirety prior to addressing our decision in *Omar*.