******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* HAJI JHMALAH BISCHOFF
## (AC 39336)

Sheldon, Elgo and Bright, Js.

*Syllabus*

Convicted of the crimes of possession of narcotics ([Rev. to 2013] § 21a-279) and possession of less than four ounces of a cannabis-type substance, the defendant appealed to this court, claiming, inter alia, that the evidence was insufficient to support his conviction of possession of narcotics and that the trial court improperly failed to instruct the jury on third-party culpability in accordance with his request to charge. The police had conducted surveillance of a motel for several months during which they saw the defendant go into the motel and into a certain room in the motel. Pursuant to a search warrant, the police entered the room, where they found the defendant and L, and recovered, inter alia, currency and $10 packets of narcotics that were on a television stand. The police also found men's clothing in the room that could have fit the defendant but not L. L also was arrested and subsequently entered a plea to certain charges against him in connection with the incident. *Held*:

1. The defendant could not prevail on his claim that the evidence was insufficient to support his conviction of possession of narcotics, which was based on his assertion that the state failed to prove that he had actual or constructive possession of the narcotics: the jury reasonably could have determined from the evidence presented and the inferences reasonably drawn therefrom that the defendant knew of the presence and narcotic character of the narcotics in the motel room, and that the defendant, as the person who frequented the room and kept clothing there, was the person who exercised control over the room and its contents, including the recovered narcotics, and such evidence was sufficient to sustain the jury's finding beyond a reasonable doubt that the defendant constructively possessed the narcotics; moreover, the jury could have inferred a consciousness of guilt on the defendant's part from his conduct in seeking to distance himself from the $10 packets of narcotics by running from them when the police entered the room and by throwing into the bathtub several bills in denominations that generally are used to purchase narcotics.

2. The trial court properly denied the defendant's request to instruct the jury on third-party culpability, there having been no evidence presented that connected L to the motel room or to the narcotics found there; there was no evidence presented showing that L possessed the narcotics, as neither the transcript of L's plea proceeding nor the certified disposition of his case was admitted into evidence, there was no heroin or cocaine in a bag of marijuana that L was sitting on when the police entered the motel room, L had not been seen by the police officers who surveilled the area of the motel or elsewhere prior to the incident at issue, and the clothing found in the motel room would not have fit L, and because there was no evidence presented to the jury that L possessed the narcotics in the motel room, to the exclusion of the defendant, an instruction on third-party culpability was not required.

3. The defendant could not prevail on his claim that he was entitled to resentencing on his conviction of possession of narcotics, which was based on his claim that the legislature, in 2015, retroactively reclassified a violation of § 21a-279 and reduced the penalty for a first offense to a class A misdemeanor that carries a maximum sentence of one year of incarceration; this court previously has determined that the 2015 amendment to § 21a-279 (a) does not apply retroactively, and that determination was dispositive of the defendant's claim.

Argued March 6—officially released June 12, 2018

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of possession of narcotics

with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell and possession of narcotics, and with the crime of possession of less than four ounces of a cannabis-type substance, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Dennis, J.*; verdict and judgment of guilty of possession of less than four ounces of a cannabis-type substance and two counts of possession of narcotics, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, with whom were *Conor J. McLaughlin*, certified legal intern, and, on the brief, *Emily H. Wagner*, assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Craig P. Nowak*, senior state's attorney, and *Merav Knafo*, certified legal intern, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Haji Jhmalah Bischoff, appeals from the judgment of conviction, rendered against him after a jury trial in the judicial district of Fairfield, on charges of possession of narcotics in violation of General Statutes (Rev. to 2013) § 21a-279 (a) and possession of less than four ounces of a cannabis-type substance (marijuana) in violation of General Statutes (Rev. to 2013) § 21a-279 (c). The defendant claims that (1) the evidence presented at trial was insufficient to support his conviction of possession of narcotics; (2) the trial court erred in failing to instruct the jury, as he requested, on third-party culpability as a defense to possession of narcotics; and (3) if his conviction of possession of narcotics is upheld, this case must be remanded for resentencing because his seven year sentence on that offense exceeds the one year statutory maximum for that offense, as it was retroactively reclassified after his arrest but before his conviction and sentencing in this case.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In July, 2014, the narcotics unit of the Stratford Police Department began to investigate the defendant. Over the next three months, officers surveilling the defendant observed him enter and exit the Honeyspot Motor Lodge in Stratford (motel) several times, and saw him enter room 208 of the motel on at least five or six of those occasions.[2]

On the morning of October 21, 2014, Sergeant Shaun Martinez went to the motel with a search warrant for room 208 and an arrest warrant for the defendant. At some point between noon and 1 p.m. on that day, while Martinez was waiting outside of the motel for the defendant to arrive, he saw the defendant exit a vehicle, together with one male and three or four female companions, and enter the motel. Thereafter, Martinez and several detectives from the Milford Police Department used a ram to break open the door of room 208. Upon entering the room—which the officers described as a small room, where "[e]verything is within a hop"—Martinez saw the defendant, who was initially standing in front of the two open cabinet doors of a television stand (TV stand), run into the bathroom. Martinez followed the defendant into the bathroom, and "tackled [him] onto the floor and took him into custody" after seeing him throw four $10 bills into the bathtub. When Martinez later searched the defendant's person, he found a small quantity of marijuana and a $10 or a $20 bill in his pocket.

When Martinez and his fellow officers first entered the room, they saw the other male who had entered the motel with the defendant, whom they later identified as Nevin Lowe, sitting in a chair approximately four to

six feet from the TV stand near which the defendant was standing. Lowe did not move from the chair until he was directed to do so by the officers conducting the search of the motel room. None of the officers who had been surveilling the defendant since July had ever seen Lowe, at the motel or elsewhere, prior to October 21, 2014.

After the defendant, Lowe and four women were removed from the room, Detectives Jonathan Policano and Jason Creatore, of the Stratford Police Department, who had been surveilling the motel from a school parking lot across the street, were called into the room to photograph it and take custody of the evidence that had been found there during the search. On top of the TV stand, they recovered an Altoids tin containing several yellow folds of heroin and thirteen small, clear Ziploc baggies and one blue baggie containing crack cocaine, in addition to $36 in United States currency and "several prescription pills, narcotic pills." Each of the folds and baggies was packed with $10 or $20 worth of heroin or crack cocaine. The officers also seized four cell phones from the dresser located "just beneath the TV . . . ."

From the chair on which Lowe had been sitting, the officers seized what Martinez described during his testimony as a "plastic baggie with several smaller plastic baggies that are used for packaging street level narcotics. Crack cocaine, specifically. There's also a baggie of marijuana, suspected marijuana. And there is what you call apple baggies. It's one big bag but it contains several, it can be fifty, a hundred, I'm not sure the exact amount, but this one baggie here with the apple on it contains several smaller baggies, and that's used for breaking down narcotics and packaging them." "There [were] several small Ziploc baggies [of] various colors, pink, yellow, clear and purple, and these baggies here are used to package crack cocaine." The search of the room did not reveal any paraphernalia necessary for using any of the recovered drugs. Also found in the room were several items of men's clothing, which, according to the officers conducting the search, could have fit the defendant, but not Lowe, because Lowe was approximately eighty pounds heavier than the defendant.

The defendant was charged in connection with these seizures, by a long form information filed February 2, 2016, with possession of heroin with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of heroin with intent to sell in violation of General Statutes § 21a-277 (a), possession of cocaine with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), possession of cocaine with intent to sell in violation of § 21a-277 (a), possession of heroin in violation of § 21a-279 (a), possession of cocaine in violation

of § 21a-279 (a), and possession of less than four ounces of a cannabis-type substance (marijuana) in violation of § 21a-279 (c).[3] Following a jury trial, the defendant was convicted of possession of heroin in violation of § 21a-279 (a), possession of cocaine in violation of § 21a-279 (a) and possession of less than four ounces of marijuana in violation of § 21a-279 (c). He was found not guilty of all remaining charges. The court merged the defendant's conviction of possession of heroin and possession of cocaine into a single conviction of possession of narcotics, on which it sentenced the defendant to seven years incarceration, suspended after five years, and three years of probation. The court sentenced the defendant on his conviction of possession of less than four ounces of marijuana to a concurrent term of one year of incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence presented at trial was insufficient to sustain his conviction of possession of narcotics because the state failed to prove that he had actual or constructive possession of the narcotics at issue in this case. We disagree.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but that] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or

facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015).

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . [T]he test for illegal possession of drugs is that the accused must know that the substance in question is a drug, must know of its presence and exercise dominion and control over it. . . .

"Importantly, [k]nowledge of the presence of narcotics and control may be proved circumstantially. . . . Knowledge that drugs are present and under a defendant's control when found in a defendant's home or car is more easily shown, of course, if the defendant has exclusive possession of the area in which the drugs are found. The difficult cases, such as the present one, arise when possession of an area, such as a car or home or an apartment, is shared with another person or persons. In situations in which the putative offender is not in exclusive possession of the premises where the narcotics are found, we may not infer that he or she knew of

the presence of the narcotics or that he or she had control over them, without incriminating statements or circumstances to support that inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Slaughter*, 151 Conn. App. 340, 345–47, 95 A.3d 1160, cert. denied, 314 Conn. 916, 100 A.3d 405 (2014).

Here, because the narcotics at issue were not found on the defendant's person, the state was required to prove that he possessed them constructively. The defendant argues that the state failed to introduce any evidence establishing either "that the defendant was the renter of room 208" or that there was any "connection between the defendant and the narcotics." We disagree.

Although it is true that the state did not introduce evidence that room 208 was registered to the defendant,[4] it did introduce evidence from which the jury reasonably could have inferred that the defendant knew of the presence of the narcotics and had control over them. When the police officers first rammed through the door of room 208, they found the defendant standing in front of the TV stand on which the narcotics at issue were resting in plain sight. The defendant had been seen entering the motel, and, more particularly, room 208, several times between July and October, 2014. The officers had never seen Lowe during that three month period of surveillance. In fact, one of the officers testified, without contradiction, that he believed that Lowe had been incarcerated during that period of time. Furthermore, the men's clothing that was found in the room, which, by inference, had been brought there by the room's occupant, could only have fit the defendant, not Lowe, who was much heavier than the defendant. The presence of the clothing supported a reasonable inference that the defendant was the regular occupant of the room, and thus that he was in possession and control of its contents.

When the officers entered the room, the defendant ran away from the TV stand and, thus, away from the narcotics in the Altoids tin. The defendant's act of running away upon the officers' entry reasonably could have been found to support an inference of consciousness of guilt, suggesting that the defendant knew of the presence and character of the narcotics on the nearby TV stand and sought to distance himself from them. Thereafter, moreover, he threw $40, all in $10 bills, into the bathtub. The police officers testified that bills in these denominations are generally used in the purchase of narcotics, particularly where, as here, they are packaged in $10 folds of heroin and $10 bags of crack cocaine. The jury reasonably could have inferred from this conduct that the defendant was trying to rid himself of evidence tying him to the $10 packets of narcotics that he knew to be on the TV stand. Finally, the surveilling officers testified that they previously had made "some controlled purchases" of narcotics from the

defendant, including at least one purchase of "crack cocaine . . . ."

Although alternative views of the evidence might conceivably have supported inferences of the defendant's innocence, our task in adjudicating a challenge to the sufficiency of the evidence is to view the evidence in the light most favorable to sustaining the jury's verdict. We conclude, on that basis, that a reasonable jury could have determined, from the evidence presented and the inferences reasonably drawn therefrom, that the defendant knew of the presence and narcotic character of the heroin and cocaine in the room, and, as the person who frequented the room and kept clothing there, it was he who exercised control over the room and its contents, including the recovered narcotics. Such evidence was sufficient to sustain the jury's finding that he constructively possessed such narcotics beyond a reasonable doubt.

## II

The defendant also claims that the trial court erred in denying his request for a jury instruction on third-party culpability. We disagree.

The defendant submitted a written request to charge the jury on third-party culpability, which read as follows: "There has been evidence that a third party, not the defendant, committed the crimes with which the defendant is charged. This evidence is not intended to prove the guilt of the third party, but is part of the total evidence for you to consider. The burden remains on the state to prove each and every element of the offense beyond a reasonable doubt.

"It is up to you, and to you alone, to determine whether any of this evidence, if believed, tends to directly connect a third party to the crimes with which the defendant is charged. If after a full and fair consideration and comparison of all the evidence, you have left in your minds a reasonable doubt indicating that the alleged third party, Nevin Lowe, Jr., may be responsible for the crimes the defendant is charged with committing, then it would be your duty to render a verdict of not guilty as to the accused, [the defendant].

"This request is based upon the evidence adduced that Nevin Lowe, Jr., was arrested for the same crime and the evidence admitted of the transcript of Nevin Lowe, Jr.'s plea and the certified disposition of his case." (Emphasis omitted.)

The court denied the defendant's request to charge the jury on third-party culpability, explaining its ruling as follows: "A charge on third-party culpability deals with instructing the jury that there actually has been evidence that someone other than the defendant committed the crime or crimes with which the defendant is charged. Under the evidence in this case . . . the law requires that I give to the jurors [an instruction]

regarding actual possession [and] constructive possession . . . . In view of the fact that I also am required to instruct the jurors that more than one person may possess the same item and explain to them that this is known as joint possession, I find that it's not appropriate to give the third-party culpability instruction. Also, in view of the rulings that I made on defense exhibit A for identification and defense exhibit B for identification. [See footnote 5 of this opinion.] Certainly, [the defense is] free to argue that theory . . . because what the jury is instructed to consider in terms of constructive possession includes that the mere presence of the defendant is not sufficient to support a finding of constructive possession. It also—they will be instructed that if the defendant is not in exclusive possession of the premises, it can't be inferred that he knew of the presence of the illegal item and had control of it unless there are other incriminating statements or circumstance tending to support the inference. They're also going to be instructed that if the evidence shows that more than one person had access to the premises, then the defendant's knowledge and intent to possess the substance must be established by evidence other than the mere fact that the defendant, along with others, occupied or had access to the premises where the substance was found. So, certainly, they're going to be thoroughly instructed on that, and you're allowed to argue your theory of the case, but I don't think that the evidence in this case is sufficient for me to give them the instruction that there has been evidence that *a third party, not the defendant, committed the crime or crimes to which he is charged.* So, I decline to give that instruction." (Emphasis added.)

The defendant claims that the court erred by failing to instruct the jury in accordance with his request to charge on third-party culpability. "In determining whether the trial court improperly refused a request to charge, [w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence. . . . [T]he very standards governing the admissibility of third party culpability evidence also should serve as the standards governing a trial court's decision of whether to submit a requested third party culpability charge to the jury. . . .

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the

determination of the proceeding more probable or less probable than it would be without the evidence. . . . Accordingly, in explaining the requirement that the proffered evidence establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party, we have stated [that] [s]uch evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of third party culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt. . . . In other words, evidence that establishes a direct connection between a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination. A trial court's decision, therefore, that third party culpability evidence proffered by the defendant is admissible, necessarily entails a determination that the proffered evidence is relevant to the jury's determination of whether a reasonable doubt exists as to the defendant's guilt. . . . Finally, [t]he trial court's ruling on the relevancy of third party inculpatory evidence will be reversed on appeal only if the court has abused its discretion or an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 810–11, 91 A.3d 384 (2014).

In his request to charge, as set forth previously, the defendant explained that his request for an instruction on third-party culpability was "based upon the evidence adduced that Nevin Lowe, Jr., was arrested for the same crime and the evidence admitted of the transcript of Nevin Lowe, Jr.'s plea and the certified disposition of his case." (Emphasis omitted.) Although Lowe was arrested on October 21, 2014, the record does not reveal that Lowe and the defendant were charged with the same crimes. Moreover, neither the transcript of Lowe's plea proceeding nor the certified disposition of his case was admitted into evidence.[5] See footnote 3 of this opinion. The trial court denied the defendant's offer to enter them into evidence, and the defendant has not challenged that ruling on appeal. Because the evidence on which the defendant sought to base his request to charge on third-party culpability was not before the jury, the defendant cannot prevail on a claim of error for failure to grant that request to charge.

Turning to the evidence that was presented to the jury, moreover, we agree with the trial court that no evidence was presented that Lowe, as opposed to the defendant, possessed the narcotics at issue. It is undisputed that Lowe, in addition to the defendant and the four unidentified females, was present in room 208 when the police officers executed the search warrant for the room on October 21, 2014. When the police

entered the room, Lowe was sitting in a chair near the TV stand on which the heroin and cocaine were found. Although Lowe was sitting on a bag of marijuana and other items commonly used to package crack cocaine for sale, there was no heroin or cocaine in that bag. There were no folds used to package heroin in the bag found in the chair where Lowe was sitting. Although the small Ziploc baggies found in that bag were of the same generic type and size as those containing cocaine in the Altoids tin, there was nothing so distinctive about them as to suggest that they had come from, and thus were possessed and controlled by, one and the same person. Lowe, like the defendant, was arrested. Unlike the defendant, however, Lowe had not been seen by the surveilling officers in the area of the motel or elsewhere prior to October 21, 2014. In fact, one officer testified that Lowe was incarcerated during that period of time. Those officers also testified that the clothing found in the motel room, which presumably belonged to the person renting and controlling the room, would have fit the defendant, but would not have fit Lowe. Thus, no evidence was presented, apart from Lowe's presence in the room on October 21, 2014, that connected Lowe either to room 208 or to the heroin or cocaine found inside the room on that date. Any evidence of Lowe's connection to the narcotics recovered from room 208 raised, at most, a bare suspicion that he, rather than the defendant, controlled and possessed them. Because there was no evidence presented to the jury that Lowe possessed the narcotics in the room, to the exclusion of the defendant, an instruction on third-party culpability was not required in this case. We thus conclude that the trial court did not err in denying the defendant's request for a jury instruction on third-party culpability in the present case.

## III

The defendant finally claims that he is entitled to resentencing on his conviction of possession of narcotics because the legislature has retroactively reclassified the violation of § 21a-279, for a first offense, as a class A misdemeanor, which carries a maximum sentence of one year of incarceration. See Public Acts, Spec. Sess., June, 2015, No. 15-2, § 1. The defendant concedes, as he must, that this court's holding in *State* v. *Moore*, 180 Conn. App. 116, 124,       A.3d      (2018), in which this court held that the 2015 amendment to § 21a-279 (a), which took effect October 1, 2015, does not apply retroactively and is dispositive of his claim. The defendant's claim that he is entitled to be resentenced must therefore fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant states in the heading of this claim in his brief that he is entitled to resentencing on his conviction under both § 21a-279 (a) and (c), he has focused his argument solely on his seven year sentence for having violated § 21a-279 (a). He thus has not properly challenged his

concurrent one year sentence for having violated § 21a-279 (c).

On October 21, 2014, the date the defendant committed the offense for which he was convicted, General Statutes (Rev. to 2013) § 21a-279 (a) provided: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

At the time of the defendant's conviction and sentencing, General Statutes (Supp. 2016) § 21a-279 (a) provided: "(1) Any person who possesses or has under such person's control any quantity of any controlled substance, except less than one-half ounce of a cannabis-type substance and except as authorized in this chapter, shall be guilty of a class A misdemeanor.

"(2) For a second offense of subdivision (1) of this subsection, the court shall evaluate such person and, if the court determines such person is a drug-dependent person, the court may suspend prosecution of such person and order such person to undergo a substance abuse treatment program.

"(3) For any subsequent offense of subdivision (1) of this subsection, the court may find such person to be a persistent offender for possession of a controlled substance in accordance with section 53a-40."

Hereinafter, unless otherwise indicated, all references to § 21a-279 (a) in this opinion are to the 2013 revision of the statute.

[2] To get to room 208, one enters the front door of the Honeyspot, which faces the roadway, walks up the staircase inside that door and walks down the hall to room 208.

[3] Lowe also was arrested. His arrest and subsequent guilty plea will be discussed in further detail in part II of this opinion.

[4] As an explanation for why the officers did not try to ascertain whether room 208 was registered to the defendant, Policano testified: "This hotel . . . when you walk into the front desk there's no computer. There's no— you can rent a room by the hour. Very often, and we've done it in the past, is to put people working for us up into the room, you just pay the guy cash. You don't have to show I.D. many times. And the paperwork, from my experience, has been unreliable. People that we're looking for [are] fugitives and so forth that we know are in a particular room; you go to the front desk and they—they give their hands up like this; they don't know."

[5] The referenced documents are marked, respectively, as defendant's exhibits A and B for identification.