******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BEN B. OMAR
(AC 44263)

Prescott, Moll and Flynn, Js.

*Syllabus*

The defendant, who previously had been convicted of various drug related
offenses, appealed to this court following the trial court's denial of his
motion to correct an illegal sentence. In 2016, after the defendant had
provided information to the state in connection with another case, the
trial court granted the defendant's application for sentence modification,
reducing his sentence to eight years of incarceration followed by five
years of special parole. In 2018, our legislature enacted a public act
(P.A. 18-63), which amended certain statutes (§§ 53a-28 (b) and 54-125e
(b)) to eliminate special parole as a punishment for certain drug related
offenses, including those for which the defendant had been convicted
and sentenced, and to require that the trial court make certain determina-
tions prior to the imposition of a period of special parole. Thereafter,
the defendant filed a motion to correct his sentence, requesting that his
term of special parole be eliminated. The trial court denied the motion,
stating that the amendments to §§ 53a-28 (b) and 54-125e (b) required
by P.A. 18-63 did not apply retroactively, and the defendant appealed
to this court. *Held* that the trial court properly denied the defendant's
motion to correct an illegal sentence: contrary to the defendant's claim,
*State* v. *Nathaniel S.* (323 Conn. 290) did not control this court's retroac-
tivity analysis because our Supreme Court found that the juvenile trans-
fer statute at issue in that case was automatic and, by its nature, proce-
dural, permitting the amendment to that statute to be applied
retroactively, whereas the special parole punishment at issue in the
present case was not automatic, rather, prior to the enactment of P.A.
18-63, choosing to impose it was an act of judicial discretion; moreover,
in accordance with *State* v. *Bischoff* (337 Conn. 739) and *State* v. *Kalil*
(314 Conn. 529), certain statutes (§§ 54-194 and 1-1 (t)), which create
the presumption that changes to criminal statutes prescribing or defining
punishment apply prospectively only unless such statutes expressly state
otherwise, applied to § 53a-28 (b), a criminal statute that prescribes or
defines a punishment; furthermore, the effective date of P.A. 18-63 is
the only textual reference to the date of applicability found in the act
and the act does not reference retroactivity, which, in light of §§ 54-194
and 1-1 (t), evidenced a legislative intent for prospective application only;
accordingly, the plain language of P.A. 18-63 clearly and unambiguously
prohibited retroactive application and such an interpretation did not
lead to an absurd or unworkable result, especially when viewed in the
context of §§ 54-194 and 1-1 (t).

Argued October 4—officially released December 14, 2021

*Procedural History*

Substitute information charging the defendant with
the crimes of possession of narcotics with intent to sell
by a person who is not drug-dependent, sale of narcotics
by a person who is not drug-dependent, conspiracy to
sell narcotics by a person who is not drug-dependent,
sale of a controlled substance within 1500 feet of a
school, and possession of a controlled substance within
1500 feet of a school, brought to the Superior Court
in the judicial district of Waterbury, geographical area
number four, and tried to the jury before *Adelman, J.*;
verdict and judgment of guilty; thereafter, the court,
*Fasano, J.*, granted the defendant's application for a
sentence modification; subsequently, the court, *Hon.
Roland D. Fasano*, judge trial referee, denied the defen-

dant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Gary A. Mastronardi*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Maureen T. Platt*, state's attorney, and *Alexandra Arroyo*, former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. This is an appeal from the judgment of the trial court denying the amended motion to correct an illegal sentence filed by the defendant, Ben B. Omar, pursuant to Practice Book § 43-22. On appeal, the defendant claims that the court erred in concluding that certain amendments to Connecticut's special parole statute, embodied in No. 18-63, §§ 1 and 2, of the 2018 Public Acts (P.A. 18-63), which became effective on October 1, 2018, did not apply retroactively to render his 2016 modified sentence imposing special parole void.[1] We disagree and, accordingly, affirm the judgment of the trial court.

We conclude that when the legislature enacted P.A. 18-63, which changed the law by prohibiting special parole as a sentence for certain narcotics offenses, it did so prospectively, not retroactively. We also conclude that the silence in P.A. 18-63 regarding retroactivity is evidence of intent for prospective application only; see *State* v. *Bischoff*, 337 Conn. 739, 756, 258 A.3d 14 (2021); that prospective application creates neither an absurd nor an unworkable result; and that General Statutes §§ 54-194 and 1-1 (t) apply and, when read together, provide that the repeal of a statute prescribing the punishment for a crime shall not affect any liability for punishment incurred before the repeal is effective, unless a contrary legislative intent is expressed within an amendatory statute.

The following facts are pertinent to our resolution of this appeal. On April 22, 2010, the defendant was convicted, after a jury trial, of the following drug offenses, which occurred on March 25, 2009: in count one, possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes (Rev. to 2009) § 21a-278 (b);[2] in count two, sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b); in count three, conspiracy to sell narcotics by a person who is not drug-dependent in violation of § 21a-278 (b) and General Statutes § 53a-48 (a); in count four, sale of a controlled substance within 1500 feet of a school in violation of General Statutes § 21a-278a (b); and in count five, possession of a controlled substance within 1500 feet of a school in violation of § 21a-278a (b). Under what was then the authority of *State* v. *Chicano*, 216 Conn. 699, 725, 584 A.2d 425 (1990) (overruled by *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013)), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), the trial court merged the second count with the first count and the fifth count with the fourth count.[3] On all charges, the defendant was sentenced to a total effective sentence of twenty-one years of incarceration, eight of which were mandatory, execution suspended after twelve years, followed by five years of probation.

On March 2, 2016, due to his cooperation in providing unsolicited information to the state that produced a guilty plea in the case of a person who had been charged in connection with a shooting, the defendant submitted an application for sentence modification. His cooperation resulted in a proceeding on that same date before the court, *Fasano, J.*, in which the defendant moved to modify his sentence, to which the state agreed. The new sentence modified his original sentence to a total effective sentence of eight years of incarceration followed by five years of special parole. It is the imposition of special parole that creates the principal issue in this appeal.

After the defendant's sentence was modified to include a term of special parole, our legislature enacted P.A. 18-63, effective October 1, 2018, which eliminated special parole as a punishment for certain drug offenses. Public Act 18-63 is titled "An Act Concerning Special Parole for High-Risk, Violent and Sexual Offenders" and contains three sections. Relevant to the present appeal are §§ 1 and 2 of P.A. 18-63,[4] which amended General Statutes (Rev. to 2009) §§ 53a-28 (b) and 54-125e (b),[5] respectively. Prior to the enactment of P.A. 18-63 and at the time of the defendant's sentence modification, § 53a-28 (b) (9) authorized a court to impose as a punishment "a term of imprisonment and a period of special parole as provided in section 54-125e." Section 1 of P.A. 18-63 amended that portion of § 53a-28 (b) (9) by adding in relevant part that "the court may not impose a period of special parole for convictions of offenses under chapter 420b." Sections 21a-278 and 21a-278a, two of the statutes under which the defendant was convicted, are included in chapter 420b of the General Statutes. Section 2 of P.A. 18-63 amended § 54-125e (b) by adding in relevant part that "the court may not impose a period of special parole unless the court determines, based on the nature and circumstances of the offense, the defendant's prior criminal record and the defendant's history of performance on probation or parole, that a period of special parole is necessary to ensure public safety." Public Act 18-63 lists an effective date of October 1, 2018.

The defendant, in a self-represented capacity, filed an amended motion to correct the March 2, 2016 sentence with the clerk on June 28, 2019. On November 25, 2019, his counsel filed a newly amended motion to correct his sentence.[6] In effect, the motion asked that Judge Fasano's modification of the defendant's sentence be corrected to eliminate the term of special parole, which had been imposed three years earlier, in 2016, because P.A. 18-63, effective October 1, 2018, had eliminated special parole as a possible sentence for the kind of drug offenses for which the defendant had been convicted and sentenced. On January 6, 2020, the state filed an objection to the amended motion to correct.

On June 9, 2020, the court, *Hon. Roland D. Fasano,* judge trial referee, denied the defendant's amended motion to correct an illegal sentence and issued a memorandum of decision. The court stated in relevant part: "[T]here is no language in the modified statute nor in the case law to support the proposition that the modification of the special parole statute applies retroactively. Such an application would result in a multitude of cases returned for resentencing." This appeal followed. Additional facts and procedural history will be set forth as necessary.

We now turn to the principal issue to be decided in this appeal, namely, whether P.A. 18-63, §§ 1 and 2, should be applied retroactively to the defendant's March 2, 2016 sentence. We agree with the trial court that P.A. 18-63 does not apply retroactively.

We begin by setting forth the standard of review applicable to this claim. Ordinarily, claims that the trial court improperly denied a defendant's motion to correct an illegal sentence are reviewed pursuant to an abuse of discretion standard. *State* v. *Fairchild*, 155 Conn. App. 196, 210, 108 A.3d 1162, cert. denied, 316 Conn. 902, 111 A.3d 470 (2015). Nonetheless, a trial court's determination of whether a new statute is to be applied retroactively or only prospectively presents a question of law over which this court exercises plenary review. See *State* v. *Bischoff*, supra, 337 Conn. 745, citing *Walsh* v. *Jodoin*, 283 Conn. 187, 195, 925 A.2d 1086 (2007).

The defendant, relying on *State* v. *Nathaniel S.*, 323 Conn. 290, 295, 146 A.3d 988 (2016), argues that the statutes amended by P.A. 18-63 are procedural in nature and, thus, that the amendments are intended to apply retroactively in the absence of a clear expression of legislative intent to the contrary. The state argues that the defendant's reliance on *Nathaniel S.* is misplaced. It argues that, because P.A. 18-63, §§ 1 and 2, repealed and replaced the imposition of a form of punishment for a criminal conviction, this court's retroactivity analysis is controlled by *State* v. *Kalil*, 314 Conn. 529, 107 A.3d 343 (2014), and *State* v. *Bischoff*, supra, 337 Conn. 739, along with our savings statutes, §§ 54-194 and 1-1 (t). The state contends that, because the legislature did not clearly and unequivocally express an intent for retroactive application of §§ 1 and 2 of P.A. 18-63, they should apply prospectively only. We agree with the state.

In *State* v. *Nathaniel S.*, supra, 323 Conn. 292, our Supreme Court addressed the retroactivity of No. 15-183, § 1, of the 2015 Public Acts, which amended the juvenile transfer statute by increasing the age of a child from fourteen to fifteen whose case is subject to automatic transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court. The defendant in *Nathaniel S.* was fourteen years old when

he allegedly committed an offense that was subject to automatic transfer, and his case was transferred to the criminal docket in accordance with the statute in effect at that time. Id., 292–93. The amendment, however, went into effect before his case was tried. Id. On appeal, our Supreme Court addressed whether the amendment applied retroactively, such that a child's case that already had been transferred to the criminal docket should be transferred back to the juvenile docket. Id.

Our Supreme Court stated: "Several rules of presumed legislative intent govern [a court's] retroactivity analysis. Pursuant to those rules, [a court's] first task is to determine whether a statute is substantive or procedural in nature." Id., 294. The court added that "[p]rocedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . [Accordingly] we have presumed that procedural . . . statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . ." (Internal quotation marks omitted.) Id., 295. The court concluded that the juvenile transfer statute was procedural in nature and held that the amendment applied retroactively. Id., 293, 296. The court stated that "the amended statute, on its face, dictates only a procedure—automatic transfer . . . ." Id., 296. It further stated that, in a previous case, it had "characterized the juvenile transfer statute as akin to a change of venue and, 'by its nature, procedural.' " Id.

In the present case, P.A. 18-63, § 1, eliminates a class of people on whom a judge can impose the punishment of special parole. Specifically, it modifies § 53a-28 (b) so that a person convicted of narcotics offenses under chapter 420b will no longer be exposed to this punishment. P.A. 18-63, § 1. Furthermore, unlike in *Nathaniel S.*, there is nothing "automatic" about special parole. Rather, prior to the enactment of P.A. 18-63, judges merely had the option of imposing special parole as one of multiple punishments. Thus, choosing to impose special parole was an act of discretion, as opposed to the automatic transfer statute at issue in *Nathaniel S.*, which applies to every fifteen year old charged with certain types of crimes. Accordingly, we reject the defendant's claim that *Nathaniel S.* governs this court's retroactivity analysis.

We now turn to the retroactivity analysis that our Supreme Court has applied in cases such as *State* v. *Kalil*, supra, 314 Conn. 529, and *State* v. *Bischoff*, supra, 337 Conn. 739. "In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 552. In contrast to *Nathaniel S.*, amendments that change the punishment structure for certain

crimes instead implicate the savings clauses codified in §§ 54-194 and 1-1 (t), "which apply to changes to criminal statutes prescribing punishment and create a presumption against retroactivity." *State* v. *Bischoff*, supra, 748 n.4. Section 54-194 provides: "The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect." Section 1-1 (t) provides: "The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed." Our Supreme Court "has interpreted [the plain meaning of] these statutes to mean that there is a presumption that changes to criminal statutes prescribing or defining punishment apply prospectively only, unless the statute expressly states otherwise." *State* v. *Bischoff*, supra, 749.

In *State* v. *Bischoff*, supra, 337 Conn. 742, the defendant was convicted of, among other crimes, possession of narcotics in violation of General Statutes (Rev. to 2013) § 21a-279 (a). After he was arrested and charged with the crime, but prior to his conviction and sentencing, the legislature enacted Public Acts, Spec. Sess., June, 2015, No. 15-2, §1 (Spec. Sess. P.A. 15-2), which amended § 21a-279 to reclassify a first offense for possession of narcotics from a class D felony subject to a maximum sentence of imprisonment of seven years, to a class A misdemeanor subject to a maximum sentence of one year of incarceration. Id., 741–42. The defendant argued that, although the amendment did not mention retroactivity, "a prospective-only application of the amendment would lead to an absurd or unworkable result . . . ." Id., 742. The court disagreed and concluded that the language of Spec. Sess. P.A. 15-2, § 1, "clearly and unambiguously" prohibited retroactive application. Id., 761.

In reaching its conclusion, our Supreme Court, quoting *Nathaniel S.*, stated that the question of whether a criminal statute has retroactive application "is one of legislative intent and is governed by well established rules of statutory construction." (Internal quotation marks omitted.) Id., 746. General Statutes § 1-2z directs that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. . . ." In *Bischoff*, the court stated: "In enacting amendments . . . our legislature explicitly repeals the prior version of the amended statute. . . . Thus, this court consistently has held . . . that amendments and substitutions to statutes are the equivalent of repeals, and, thus, the savings statutes apply to any change—amendment,

substitution, or repeal—to a criminal statute *prescrib-ing or defining punishment*." (Emphasis added.) *State v. Bischoff*, supra, 337 Conn. 748 n.5.

Our Supreme Court in *Bischoff* first looked to the effective date of the amendment, which was "the only textual reference to the date of applicability" found in the bill. Id., 747. The court noted that, although the effective date of an amendment is not dispositive of the legislature's intent regarding retroactivity, it "consider[s] the effective date in light of the applicable savings statutes and the legislature's lack of any reference to retroactivity." Id., 748. Additionally, the court noted that §§ 54-194 and 1-1 (t) applied because Spec. Sess. P.A. 15-2, § 1, "repealed and replaced the penalty structure for the crime of possession of narcotics . . . ." (Footnote omitted.) Id., 748–49.

Our Supreme Court in *Bischoff* also rejected the defendant's argument that the legislature did not intend for §§ 54-194 and 1-1 (t) to apply to ameliorative changes to sentencing schemes. Id., 750. It stated that, "[s]ince at least 1936, this court has held that changes to criminal sentencing schemes, even those that provide a benefit to defendants, are subject to these savings statutes." Id., 751–52. In concluding that the amendment did not apply retroactively, the court stated that its interpretation of the statute "does not lead to an absurd or unworkable result, especially when viewed in context of the related savings statutes, §§ 54-194 and 1-1 (t)." Id., 761.

In the present case, P.A. 18-63, §§ 1 and 2, both provide that subsection (b) of § 53a-28 and subsection (b) of § 54-125e are "*repealed* and the following is substituted in lieu thereof . . . ." (Emphasis added.) Furthermore, special parole is a form of punishment and § 53a-28 (b) (9) sets forth the circumstances in which a court can impose this punishment. Thus, it is fair to characterize § 53a-28 (b) as a criminal statute that prescribes or defines a punishment. Accordingly, pursuant to *Bischoff*, §§ 54-194 and 1-1 (t) apply to the present case.

Having concluded that our savings statutes apply to the present case, we must interpret the plain meaning of the amendments to §§ 53a-28 (b) and 54-125e (b). As stated previously, § 1-2z directs us to first look at the text of the statutes themselves and their relationships to other statutes. "If, after examining such text and considering such relationship[s], the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute[s] shall not be considered." (Internal quotation marks omitted.) *State* v. *Heredia*, 310 Conn. 742, 756, 81 A.3d 1163 (2013). "[T]he fact that . . . relevant statutory provisions are silent . . . does not mean that they are ambiguous. . . . [O]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one

plausible interpretation." (Internal quotation marks omitted.) *State* v. *Jackson*, 153 Conn. App. 639, 644, 103 A.3d 166 (2014), cert. denied, 315 Conn. 912, 106 A.3d 305 (2015).

The effective date of P.A. 18-63 is October 1, 2018. As in *Bischoff*, this date is the only textual reference to the date of applicability found in the act, and there is no mention of retroactivity. The silence of P.A. 18-63 regarding retroactivity does not mean that the act is ambiguous. As our Supreme Court stated in *State* v. *Bischoff*, supra, 337 Conn. 756, "because we must assume that the legislature is aware that we have interpreted §§ 54-194 and 1-1 (t) as requiring an explicit expression of intent regarding retroactivity to overcome this presumption, we likewise must assume that the legislature's silence regarding retroactivity in [a particular act] is evidence of an intent for prospective application only." If the legislature had intended the amendments in the present case to apply retroactively, it would have used " 'clear and unequivocal' language to evince such an intent." *State* v. *Kalil*, supra, 314 Conn. 558. In the absence of any express language in the statute stating otherwise, the amendments apply prospectively only. In light of our well established interpretation of §§ 54-194 and 1-1 (t), the fact that P.A. 18-63, §§ 1 and 2, are silent regarding retroactivity does not create ambiguity. See *State* v. *Bischoff*, supra, 756. Thus, there is no ambiguity in P.A. 18-63, §§ 1 and 2, that would require us to examine the act's legislative history.

Accordingly, we conclude that the plain language of P.A. 18-63, §§ 1 and 2, clearly and unambiguously prohibits retroactive application and that this interpretation does not lead to an absurd or unworkable result, especially when viewed in context of the related savings statutes, §§ 54-194 and 1-1 (t). See id., 761. Therefore, we conclude that the trial court properly denied the defendant's amended motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the time of oral argument of this case, defense counsel withdrew the defendant's claim that the trial court erroneously concluded that it lacked jurisdiction to hear his claim of improper or insufficient canvassing. At the same time, defense counsel withdrew the defendant's claim that the trial court abused its discretion in concluding that the defendant's special parole term had not been imposed in a manner that violated federal due process.

[2] Our references in this opinion to § 21a-278 (b) are to the 2009 revision of the statute.

[3] We note that, pursuant to *State* v. *Polanco*, supra, 308 Conn. 245, which was decided after the defendant in the present case was sentenced, when a defendant has been convicted of greater and lesser included offenses, the trial court must vacate, rather than merge, the judgment of conviction for the lesser included offense.

[4] Public Act 18-63 provides in relevant part: "Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. Subsection (b) of section 53a-28 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2018*):

"(b) Except as provided in section 53a-46a, when a person is convicted

of an offense, the court shall impose one of the following sentences  .  .  . (9) a term of imprisonment and a period of special parole as provided in section 54-125e, *as amended by this act, except that the court may not impose a period of special parole for convictions of offenses under chapter 420b.*

"Sec. 2. Subsection (b) of section 54-125e of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2018*): (b) *(1)* When sentencing a person, *the court may not impose a period of special parole unless the court determines, based on the nature and circumstances of the offense, the defendant's prior criminal record and the defendant's history of performance on probation or parole, that a period of special parole is necessary to ensure public safety.  .  .  .*" (Emphasis in original.)

[5] Unless we state otherwise, our references in this opinion to §§ 53a-28 (b) and 54-125e are to the 2009 revisions of those statutes.

[6] In his November 25, 2019 motion to correct an illegal sentence, the defendant stated: "On or about December 10, 2018, while on his special parole, [the defendant] was charged with [assault in the third degree] which violated his special parole. Significantly, he was free in the community for about three years when this new charge took place. On or about April 22, 2019, he was sentenced [to] a charge of reckless endangerment and was sentenced to one year [of incarceration], execution suspended, followed by three years of probation.

"Following his conviction  .  .  . he was then presented to the parole board on or about June 11, 2019, and was incarcerated for one year to serve with the earliest discharge date being February 4, 2020."

---