******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* NICO GONZALEZ
(AC 44630)

Moll, Cradle and Eveleigh, Js.

*Syllabus*

The defendant, who had been convicted, on a plea of guilty, of the crimes of assault in the first degree and carrying a pistol without a permit, appealed to this court from the judgment of the trial court denying his motion to correct an illegal sentence. The defendant was sentenced in 2017 to a term of incarceration followed by a period of special parole. Subsequently, the legislature enacted No. 18-63, § 2, of the 2018 Public Acts (P.A. 18-63), which repealed and replaced subsection (b) of the special parole statute ((Rev. to 2017) § 54-125e), to require a trial court, when sentencing a person, to determine, based on various factors, whether a period of special parole was necessary to ensure public safety. The defendant alleged in his motion to correct an illegal sentence that P.A. 18-63 applied retroactively to his sentence of special parole and that the court should vacate that part of his sentence and hold a new sentencing hearing. The court denied the defendant's motion, concluding that P.A. 18-63 did not apply retroactively. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on his claim that § 2 of P.A. 18-63 was intended to apply retroactively to his sentence of special parole on the basis that § 54-125e is procedural in nature rather than substantive: this court concluded that the defendant's claim was governed by its decision in *State* v. *Omar* (209 Conn. App. 283), in which it determined that, because P.A. 18-63 repealed and replaced the imposition of a form of punishment for a criminal conviction, the plain meaning analysis set forth in *State* v. *Bischoff* (337 Conn. 739) controlled and the criminal savings statutes (§§ 54-194 and 1-1 (t)) applied to P.A. 18-63, and, having considered the plain language of § 2 of P.A. 18-63, determined that the act clearly and unambiguously prohibited retroactive application; moreover, this court determined in *Omar* that, in the absence of a clear and unequivocal expression of legislative intent that an amendment to a criminal penalty applied retroactively, an act repealing and replacing the imposition of a form of punishment is governed by the presumption in the criminal savings statutes against retroactivity.

2. The defendant could not prevail on his claim that P.A. 18-63 was intended to apply retroactively to his sentence of special parole because the legislative history and amendatory language of P.A. 18-63 demonstrated that it was meant to clarify § 54-125e, rather than effect a change in the law: this court concluded that its decision in *State* v. *Smith* (209 Conn. App. 296) controlled this claim, this court having held in *Smith* that the legislature, in passing P.A. 18-63, did not intend to clarify § 54-125e, that the language in the prior version of § 54-125e (b) was already clear prior to the amendment, and the language that was added changed § 54-125e (b) by narrowing its application; moreover, contrary to the defendant's contention that *Smith* was concerned primarily with § 1 and not § 2 of P.A. 18-63, it was clear that this court in *Smith* considered both sections of P.A. 18-63 and determined that neither was intended to clarify the statutes at issue, including § 54-125e.

Argued May 11—officially released August 23, 2022

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the first degree, attempt to commit murder, illegal discharge of a firearm, illegal possession of a weapon in a motor vehicle, and carrying a pistol without a permit, brought to the Superior Court in the judicial district of Waterbury, where the defendant was presented to the court, *Fasano, J.*, on a plea of guilty to assault in the first degree and carrying a

pistol without a permit; judgment of guilty; thereafter, the court, *Hon. Roland D. Fasano*, judge trial referee, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (defendant).

*Kayla A. Steefel*, certified legal intern, with whom were *Michele C. Lukban*, senior assistant state's attorney, and, on the brief, *Maureen Platt*, state's attorney, and *Cynthia S. Serafini*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Nico Gonzalez, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant claims that the court improperly determined that No. 18-63, § 2, of the 2018 Public Acts (P.A. 18-63), which amended General Statutes (Rev. to 2017) § 54-125e (b) to require that a trial court determine that a period of special parole is necessary to ensure public safety before imposing a period of special parole, did not retroactively apply to his 2017 sentence. See General Statutes § 54-125e (b) (1). Specifically, the defendant claims that (1) § 54-125e, as amended by § 2 of P.A. 18-63, is a procedural statute presumed to apply retroactively, and (2) the legislature, through passing § 2 of P.A. 18-63, intended to clarify § 54-125e, rather than change the law. We affirm the judgment of the trial court.

The record reveals the following relevant procedural history. In connection with the defendant's commission of a shooting on January 2, 2017, the defendant was charged, by way of a substitute information, with one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), one count of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, one count of illegal discharge of a firearm in violation of General Statutes § 53-203, one count of illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a).

On October 11, 2017, the defendant pleaded guilty, under the *Alford* doctrine,[1] to one count of assault in the first degree in violation of § 53a-59 (a) (1); and one count of carrying a pistol without a permit in violation of § 29-35 (a). On December 15, 2017, the court, *Fasano, J.*, imposed a total effective sentence of five years of incarceration, followed by five years of special parole.

At the time the defendant was convicted, General Statutes (Rev. to 2017) § 54-125e authorized a court to impose a period of special parole "as a sentencing option in cases [in which] the judge wanted additional supervision of a defendant after the completion of his prison sentence." (Internal quotation marks omitted.) *State* v. *Victor O.*, 320 Conn. 239, 252, 128 A.3d 940 (2016). Specifically, special parole was intended by the legislature to "[ensure] intense supervision of convicted felons after they're released to the community and [allow] the imposition of parole stipulations on . . . released inmate[s] to ensure their successful incremental [reentry] into society or if they violate their stipulations, speedy [reincarceration] before they commit [other] crime[s]." (Internal quotation marks omitted.) Id.

After the defendant was sentenced, our legislature

enacted P.A. 18-63, which eliminated special parole as a punishment for certain offenses.[2] See *State* v. *Smith*, 209 Conn. App. 296, 299, 268 A.3d 127 (2021), cert. denied, 342 Conn. 905, 270 A.3d 691 (2022). Relevant to the present appeal is § 2 of P.A. 18-63, which amended General Statutes (Rev. to 2017) § 54-125e (b) by adding, in relevant part, that "the court may not impose a period of special parole unless the court determines, based on the nature and circumstances of the offense, the defendant's prior criminal record and the defendant's history of performance on probation or parole, that a period of special parole is necessary to ensure public safety." (Emphasis omitted.) Public Act 18-63 lists an effective date of October 1, 2018.

In July, 2020, the defendant, as a self-represented party, filed a motion to correct an illegal sentence, pursuant to Practice Book § 43-22.[3] The defendant subsequently was appointed counsel[4] and, on December 18, 2020, filed an amended motion to correct an illegal sentence, alleging that § 2 of P.A. 18-63 applied retroactively to his sentence of special parole. Specifically, the defendant claimed that because P.A. 18-63 was a "procedural rule . . . intended to clarify a preexisting statute," the legislature intended that it apply retroactively. Accordingly, because the sentencing court never determined that a period of special parole was necessary to ensure public safety, the defendant claimed that the court should vacate that part of his sentence and hold a new sentencing hearing in order to consider the factors now set forth in § 54-125e (b) (1).

In response, the state filed an opposition to the defendant's motion to correct an illegal sentence arguing, inter alia, that the legislature did not intend P.A. 18-63 to apply retroactively. The state also contended that, even under the amended statute, the defendant would still qualify for a period of special parole due to his criminal history and the violent nature of the underlying offense. The court heard argument from both parties on February 10, 2021.

On February 23, 2021, the court denied the defendant's motion to correct an illegal sentence. In its memorandum of decision, the court found that there was "neither any evidence of an intent that [P.A. 18-63] be retroactive nor any authority in the case law for [that] proposition" and determined that "[t]he nature of the change to [§ 54-125e] [was] clearly substantive in that factual findings must be made by the court relative to [the defendant's] history and circumstances in order to place [the defendant] on special parole under the current guidelines." In addition, the court relied on our Supreme Court's decision in *State* v. *Bischoff*, 337 Conn. 739, 761–62, 258 A.3d 14 (2021), for the proposition that, in the absence of clear legislative intent, criminal statutes that prescribe or define punishment apply prospectively. Accordingly, the court concluded that P.A.

18-63 did not apply retroactively. This appeal followed.

We begin by setting forth the standard of review applicable to this claim. "Ordinarily, claims that the trial court improperly denied a defendant's motion to correct an illegal sentence are reviewed pursuant to an abuse of discretion standard. . . . Nonetheless, a trial court's determination of whether a new statute is to be applied retroactively or only prospectively presents a question of law over which this court exercises plenary review." (Citation omitted.) *State* v. *Smith*, supra, 209 Conn. App. 301.

I

The defendant first claims that § 2 of P.A. 18-63 was intended to apply retroactively to his sentence of special parole because § 54-125e, as amended by § 2 of P.A. 18-63, is procedural in nature, rather than substantive. See *State* v. *Nathaniel S.*, 323 Conn. 290, 294–96, 146 A.3d 988 (2016) (explaining that, in absence of clear expression of legislative intent, procedural statutes are presumed to apply retroactively whereas substantive statutes apply only prospectively). We are not persuaded.

The defendant's claim is governed by this court's decision in *State* v. *Omar*, 209 Conn. App. 283, 268 A.3d 726 (2021), cert. denied, 342 Conn. 906, 270 A.3d 691 (2022). In *Omar*, the defendant argued, as does the defendant in the present case, that § 54-125e (b), as amended by § 2 of P.A. 18-63, is procedural in nature and therefore presumed to apply retroactively. Id., 289–90. Specifically, the defendant in *State* v. *Omar*, supra, 290, contended that this court should apply to P.A. 18-63 the retroactivity analysis set forth in *State* v. *Nathaniel S.*, supra, 323 Conn. 295, which provides, in relevant part, that "[p]rocedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . [Accordingly] we have presumed that procedural . . . statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . ." (Internal quotation marks omitted.) This court rejected the argument that P.A. 18-63 is procedural in nature. Rather, this court determined that, unlike the court in *Nathaniel S.*, which concluded that No. 15-183 of the 2015 Public Acts (P.A. 15-183) was procedural due to the act's "automatic transfer" provision[5]; *State* v. *Nathaniel S.*, supra, 301; the special parole statutes at issue merely provided the "option of imposing special parole as one of multiple punishments." *State* v. *Omar*, supra, 290–91. This court proceeded to clarify that "choosing to impose special parole was an act of discretion, as opposed to the automatic transfer statute at issue in *Nathaniel S.*, which applies to every fifteen year old charged with certain types of crimes." Id., 291–92.

This court then determined that, because P.A. 18-63 repealed and replaced the imposition of a form of

punishment for a criminal conviction, this court's retro-activity analysis was controlled by our Supreme Court's decisions in *State* v. *Kalil*, 314 Conn. 529, 107 A.3d 343 (2014), and *State* v. *Bischoff*, supra, 337 Conn. 739,[6] as well as our criminal savings statutes, General Statutes §§ 54-194[7] and 1-1 (t).[8] *State* v. *Omar*, supra, 290–92; see also *State* v. *Smith*, supra, 209 Conn. App. 307. Specifically, this court noted that the decisions in *Kalil* and *Bischoff* established that, in the absence of a clear and unequivocal expression of legislative intent that an amendment to a criminal penalty applies retroactively, an act repealing and replacing the imposition of a form of punishment is governed by the criminal savings stat-utes' presumption against retroactivity. *State* v. *Omar*, supra, 292–96. Accordingly, this court concluded that the proper test for determining whether § 2 of P.A. 18-63, applied retroactively was pursuant to the plain meaning rule set forth in General Statutes § 1-2z.[9] Id., 295. After analyzing the text of P.A. 18-63, as well as the act's effective date, this court determined that the plain language of § 2 of P.A. 18-63 "clearly and unambig-uously prohibits retroactive application and that this interpretation [did] not lead to an absurd or unworkable result, especially when viewed in context of the related savings statutes, §§ 54-194 and 1-1 (t)." Id., 296.

The defendant argues that the present case is distin-guishable from *Omar* because the court in that decision did not consider "whether P.A. 18-63, § 2 (as opposed to § 1 or P.A 18-63 as a whole) applies retroactively in isolation." Specifically, the defendant contends that the analysis in *Omar* "turned heavily on the statutory change enacted by [§ 1 of P.A. 18-63]," which modified General Statutes (Rev. to 2017) § 53a-28 by prohibiting courts from imposing special parole for narcotics offenses, rather than § 2 of P.A. 18-63, which amended General Statutes (Rev. to 2017) § 54-125e to require that a trial court determine that a period of special parole is necessary to ensure public safety. We conclude that the defendant relies upon an incorrect reading of *Omar*. Indeed, this court in *Omar* found that P.A. 18-63, §§ 1 *and 2*, repealed and replaced both subsection (b) of § 53a-28 and *subsection (b) of § 54-125e*, respectively. *State* v. *Omar*, supra, 209 Conn. App. 294. As such, this court correctly determined that the plain meaning analysis set forth in *State* v. *Bischoff*, supra, 337 Conn. 739, as well as our criminal savings statutes, §§ 54-194 and 1-1 (t), applied to both §§ 1 and 2 of P.A. 18-63. *State* v. *Omar*, supra, 294. This court then explicitly considered the plain language of both §§ 1 and 2 of P.A. 18-63 and determined that the act "clearly and unambiguously prohibits retroactive application . . . ." Id., 296. In light of this court's decision in *Omar*, we conclude that the defendant's claim must fail.

## II

The defendant's second claim is that P.A. 18-63 was

intended to apply retroactively because the legislative history and amendatory language of P.A. 18-63 demonstrate that the act was meant to clarify § 54-125e, rather than effect a change in the law. See *Estate of Brooks* v. *Commissioner of Revenue Services*, 325 Conn. 705, 720, 159 A.3d 1149 (2017) ("An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . Furthermore, an amendment that is intended to clarify the intent of an earlier act necessarily has retroactive effect." (Internal quotation marks omitted.)), cert. denied,      U.S.     , 138 S. Ct. 1181, 200 L. Ed. 2d 314 (2018). We disagree.

The defendant's claim is controlled by this court's decision in *State* v. *Smith*, supra, 209 Conn. App. 296. In *Smith*, this court held that the legislature, through passing P.A. 18-63, did not intend to clarify § 54-125e and, therefore, that the doctrine of clarifications did not govern the court's retroactivity analysis.[10] Id., 306–307. Specifically, this court determined that P.A. 18-63 did not resolve any ambiguity in the text of § 54-125e, but rather "eliminated a punishment that the plain language of [§] . . . 54-125e explicitly allowed the courts to impose . . . prior to its enactment." Id., 306. Stated otherwise, "the language in the prior [revision] of [§ 54-125e] was already clear prior to the [amendment], and the legislature added language to *change* [it] by narrowing [its] application." (Emphasis added.) Id., 307. This court then reaffirmed its holding in *Omar*, namely, that the retroactivity analysis for P.A. 18-63 was controlled by *State* v. *Kalil*, supra, 314 Conn. 529, and *State* v. *Bischoff*, supra, 337 Conn. 739, along with our savings statutes, §§ 54-194 and 1-1 (t). *State* v. *Smith*, supra, 307–308. Accordingly, this court concluded that "when the legislature enacted P.A. 18-63, which changed the law by prohibiting special parole as a sentence for certain . . . offenses, it did so prospectively, not retroactively." Id., 298.

Although the defendant's claim appears to be plainly governed by this court's decision in *Smith*, the defendant again attempts to distinguish the present case by arguing that his claim requires this court to consider "whether § 2 of P.A. 18-63, standing alone, was enacted with the intent to clarify the special parole statute," whereas the court in *Smith* considered "whether §§ 1 and 2 [of P.A. 18-63] *collectively* were clarifying legislation." (Emphasis in original.) Specifically, the defendant argues that this court's analysis in *Smith* was concerned primarily with § 1 of P.A. 18-63, rather than § 2 of P.A. 18-63, when considering whether the act was clarifying in nature. In concluding that P.A. 18-63 was not clarifying, however, this court explicitly stated that "the legislature did not incorporate into the title or text of P.A. 18-63 an explicit statement of its intent to clarify §§ 53a-28 (b) *and 54-125e (b)*" and that, "in enacting P.A. 18-63, the legislature eliminated a punishment that the

plain language of §§ 53a-28 (b) *and 54-125e* explicitly allowed courts to impose on . . . offenders prior to its enactment." (Emphasis added.) *State* v. *Smith*, supra, 209 Conn. App. 306. It is clear, therefore, that this court in *Smith* considered both §§ 1 and 2 of P.A. 18-63 and determined that neither section was intended to clarify § 53a-28 (b) or § 54-125e (b). Id., 306–307. Accordingly, we conclude that *Smith* controls the present appeal to the extent that the defendant argues that § 2 of P.A. 18-63 was intended to clarify § 54-125e.

In the alternative, the defendant requests that we reconsider and overrule this court's decision in *Smith*. Specifically, the defendant contends that *Smith* is "inconsistent with binding Supreme Court precedent" insofar as it precludes this court from examining extra-textual evidence when considering the retroactive effect of amendments to criminal statutes that prescribe or define a punishment. See footnote 9 of this opinion. It is well established, however, that "one panel of this court cannot overrule the precedent established by a previous panel's holding. . . . As we often have stated, this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc. . . . Prudence, then, dictates that this panel decline to revisit such requests." (Citations omitted; internal quotation marks omitted.) *Staurovsky* v. *Milford Police Dept.*, 164 Conn. App. 182, 202–203, 134 A.3d 1263 (2016), appeal dismissed, 324 Conn. 693, 154 A.3d 525 (2017). Accordingly, we decline to revisit this court's well reasoned analysis regarding the retroactive effect of P.A. 18-63 set forth in *Smith*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Celaj*, 163 Conn. App. 716, 718–19 n.3, 141 A.3d 870 (2016).

[2] Public Act 18-63 provides in relevant part: "Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. Subsection (b) of section 53a-28 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2018*):

"(b) Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences . . . (9) a term of imprisonment and a period of special parole as provided in section 54-125e, *as amended by this act*, *except that the court may not impose a period of special parole for convictions of offenses under chapter 420b.*

"Sec. 2. Subsection (b) of section 54-125e of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2018*):

"(b) *(1)* When sentencing a person, *the court may not impose a period of special parole unless the court determines, based on the nature and circumstances of the offense, the defendant's prior criminal record and the defendant's history of performance on probation or parole, that a period of special parole is necessary to ensure public safety. . . .*" (Emphasis in original.)

[3] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[4] On October 23, 2020, the court, *Hon. Roland D. Fasano*, judge trial referee, appointed a special public defender to determine whether the defendant had a "sound basis" for filing his motion to correct an illegal sentence. See *State* v. *Casiano*, 282 Conn. 614, 627–28, 922 A.2d 1065 (2007) (holding that General Statutes § 51-296 (a) entitles indigent defendant to appointment of counsel for purpose of determining whether sound basis exists for him or her to file motion to correct illegal sentence, and, if such basis exists, to counsel for purpose of pursuing motion to its conclusion). The special public defender subsequently determined that the defendant's claim had merit and filed an amended motion to correct an illegal sentence on the defendant's behalf. The court thereafter appointed the special public defender to continue representing the defendant through the conclusion of the proceedings.

[5] Section 1 of P.A. 15-183 amended the juvenile transfer statute, General Statutes (Rev. to 2013) § 46b-127 (a) (1), by "increas[ing] the age of a child whose case was subject to an automatic transfer by one year, [from fourteen] to fifteen years old. . . . Prior to this amendment, the court was required to transfer a case from the juvenile docket to the regular criminal docket [of the Superior Court] in which a child . . . had been charged with the commission of certain felonies and had attained the age of fourteen years prior to the commission of such offenses." (Citation omitted; emphasis omitted.) *State* v. *Nathaniel S.*, supra, 323 Conn. 292. On appeal, our Supreme Court concluded that P.A. 15-183 was procedural in nature and therefore presumed to apply retroactively. Id., 296. Specifically, our Supreme Court noted that it previously had characterized the juvenile transfer statute as "akin to a change of venue," which, "by its nature, [is] procedural," and that "[t]he only change effectuated by P.A. 15-183 is to narrow the class of persons *to whom this procedure applies*." (Emphasis added; internal quotation marks omitted.) Id.

[6] In *State* v. *Kalil*, supra, 314 Conn. 550, our Supreme Court considered whether No. 09-138, § 2, of the 2009 Public Acts (P.A. 09-138), which increased the minimum value element of the second degree larceny statute from $5000 to $10,000, and which would have resulted in a downgrade of the defendant's second degree larceny charge to third degree larceny and a reduction in his sentence, applied retroactively under the amelioration doctrine. In declining to adopt the amelioration doctrine, our Supreme Court noted that, in determining whether a change in a criminal statute prescribing punishment applies retroactively, the court is bound by the presumption against retroactivity contained in our criminal savings statutes, General Statutes §§ 54-194 and 1-1 (t). Id., 552–53. Specifically, our Supreme Court rejected the argument that the criminal savings statutes did not apply to ameliorative changes in the law, holding instead that the savings statutes applied to all changes to criminal statutes defining or prescribing punishment, even if the change benefits defendants, unless the legislature explicitly provides otherwise. Id., 553–56.

In *State* v. *Bischoff*, supra, 337 Conn. 766–68, our Supreme Court reaffirmed its decision in *Kalil*, noting that the plain meaning rule set forth in General Statutes § 1-2z governs the retroactivity analysis for statutory amendments that define or prescribe the punishment for a crime. Accordingly, our Supreme Court concluded that our criminal savings statutes require that the legislature "use explicit—i.e., 'plain'—language to express its intent to apply such a statute retroactively . . . [and that §] 1-2z is . . . evidence of the legislature's intent that its statutes be taken at face value, and not only supports, but requires our conclusion that, unless explicitly stated otherwise, acts governed by §§ 54-194 and 1-1 (t) must be presumed to apply only prospectively." Id., 767.

[7] General Statutes § 54-194 provides: "The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect."

[8] General Statutes § 1-1 (t) provides: "The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed."

[9] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[10] The defendant cites our Supreme Court's decision in *Estate of Brooks* v. *Commissioner of Revenue Services*, supra, 325 Conn. 719–21, for the proposition that this court is bound to consider the legislative history, along-side the plain text, when determining whether § 2 of P.A. 18-63 was intended to clarify § 54-125e. In particular, the defendant relies on language set forth in *Estate of Brooks*: "Resolution of the question of whether amendatory language is clarifying in nature does not first require full statutory construction of the original language or a predicate finding of ambiguity. . . . Rather, courts apply the multifactor test set forth and applied in this opinion." (Citation omitted.) Id., 724 n.18. This test includes, but is not limited to "(1) the amendatory language . . . (2) the declaration of intent, if any, contained in the public act . . . (3) the legislative history . . . and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was enacted in direct response to a judicial decision that the legislature deemed incorrect . . . or passed to resolve a controversy engendered by statutory ambiguity . . . ." (Internal quotation marks omitted.) Id., 721.

This court rejected that argument in *Smith*, holding that the multifactor analysis did not apply to amendatory legislation relating to the punishment for crimes. *State* v. *Smith*, supra, 209 Conn. App. 303–304 (rejecting defendant's contention that multifactor test set forth in *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 927 A.2d 793 (2007), governed retroactivity analysis). Rather, this court concluded that the interpretation of amendments to criminal statutes that prescribe or define a punishment is controlled by our Supreme Court's decisions in *State* v. *Kalil*, supra, 314 Conn. 529, and *State* v. *Bischoff*, supra, 337 Conn. 739, along with our savings statutes, §§ 54-194 and 1-1 (t), which require that reviewing courts interpret the legislature's intent pursuant to § 1-2z. *State* v. *Smith*, supra, 307–308; see also *State* v. *Omar*, supra, 209 Conn. App. 292–96. In *Smith*, this court explicitly determined that the plain text of P.A. 18-63 was not intended to clarify § 54-125e but, rather, changed the statutory scheme governing special parole by narrowing its application. *State* v. *Smith*, supra, 307. Because the plain text of P.A. 18-63 was not ambiguous, our principles of statutory interpretation precluded this court from considering the legislative history behind the act. Id., 304, 307. Accordingly, the defendant's argument that this court is bound to consider the legislative history behind P.A. 18-63, pursuant to the multifactor test set forth in *Estate of Brooks*, must fail.

The defendant also relies on *State* v. *Evans*, 329 Conn. 770, 803–808, 189 A.3d 1184 (2018), cert. denied,    U.S.   , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019), for the proposition that this court in *Smith* should have considered the legislative history underlying P.A. 18-63 when determining whether P.A. 18-63 was intended to clarify § 54-125e (b). Although our Supreme Court in *Evans* did probe the legislative history underlying No. 17-17 of the 2017 Public Acts (P.A. 17-17) in determining whether that act was intended to be clarifying or substantive, it did so in the context of stare decisis, and not in determining whether P.A. 17-17 was intended to apply retroactively. To reiterate, the proper retroactivity analysis for amendments to criminal statutes that prescribe or define a punishment is controlled by our Supreme Court's decisions in *State* v. *Kalil*, supra, 314 Conn. 529, and *State* v. *Bischoff*, supra, 337 Conn. 739, along with our savings statutes, §§ 54-194 and 1-1 (t). "It is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Montanez*, 185 Conn. App. 589, 605 n.5, 197 A.3d 959 (2018), cert. denied, 332 Conn. 907, 209 A.3d 643 (2019). We conclude, accordingly, that the clarification analysis set forth in *Evans* does not govern the present appeal.